**STATE of Missouri, Plaintiff-Respondent,**

v.

**Bruce YOUNG, Defendant-Appellant.**

**No. 48867.**

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 22, 1985.

Motion for Rehearing and/or Transfer Denied Nov. 21, 1985.

Application to Transfer Denied Jan. 15, 1986.

Cathy R. Gilbert, Asst. Public Defender, St. Louis, for defendant-appellant.

Leah A. Murray, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Defendant was convicted by a jury of first degree robbery, § 569.020.1 RSMo 1978, and armed criminal action, § 571.-015.1 RSMo 1978. He was sentenced to the custody of the Missouri Department of Corrections and Human Resources for a term of twenty (20) years on the robbery conviction and fifteen (15) years on the armed criminal action conviction. These sentences to be served concurrently.

Defendant contends on appeal that the trial court erred: (1) in admitting into evidence clothing seized from defendant and a photograph and testimony relating the line-up identification of defendant in that they were fruits of an illegal arrest; (2) in denying defendants motion to suppress the pre-trial line-up identifications and the in-court identifications of two of the robbery victims because the line-up procedures were so impermissibly suggestive that they undermined the reliability of the in-court identifications; (3) in admitting into evidence a .38 caliber revolver and cartridges which were seized from the apartment where defendant was arrested and the testimony relating to said items because there was no evidence connecting the weapon or the ammunition to the defendant or the crime thereby rendering their admission into evidence irrelevant, non-probative, and prejudicial; (4) in denying defendant's motion to strike for cause one of the jurors who intentionally failed to admit to knowing defense counsel, or to the fact that he had dealt with her on a professional basis when she was an assistant circuit attorney; (5) in arbitrarily excluding defendant's young daughter and cousin from the courtroom; and (6) in denying defendant's motion for a mistrial when several jurors were overheard discussing the case before it was formally presented to them for deliberation. We affirm.

Defendant does not challenge the sufficiency of the evidence. However, a brief recitation of the facts is necessary to resolve the issues presented on appeal. Viewed in the light most favorable to the state the record reflects the following facts.

On January 14, 1983 around 4:30 p.m. defendant entered Les' True Buy Supermarket in St. Louis, Missouri. He went over to the male cashier at register four, pulled a gun from his pocket, and pointed it at him. Consequently, the male cashier ran to the back of the store and hid in the cooler area. Subsequently, defendant approached a female cashier working at the register in the next aisle. He pressed the gun to her side, cocked the hammer, and

threatened to shoot her if she didn't open up the cash register. She opened the cash register, removed the money and passed it to the defendant. The female cashier then fainted, losing consciousness for a few seconds. Defendant fled from the supermarket. He was observed by a third witness running from the supermarket to the passenger side of a green Buick, license plate number GYZ 737 and driving away with an accomplice.

Two officers responded to the scene of the robbery and investigated the incident. One of the officers interviewed the male cashier who described the robber as "a negro male, in mid-thirties, medium build, wearing a dark plaid jacket." The other officer interviewed the female cashier and from her obtained the following description, "a negro male, approximately 35 years of age. He was five feet seven inches tall; medium build; and had on dark clothing; and was armed with a .38 caliber revolver." Another description was given by the third witness. He described the culprit as "a negro male, about 35, about five-seven to five-nine, 170 pounds, dark complected, and he was wearing a dark plaid jacket, and a dark skull cap."

The police officers determined that the vehicle in which defendant fled was registered to an Andrea Mosley. At the conclusion of their investigation one of the officers broadcast the information regarding the car and the description of the suspect over the police radio.

Later that same evening, at approximately 9:00 p.m., two police officers, in the course of their investigation into an unrelated larceny case, went to the apartment building where the registered owner of the car allegedly involved in the supermarket robbery resided. While knocking on the door of the apartment which was the address of the juvenile suspect involved in the larceny case, the policemen were met by the woman who leased the apartment, her husband, and the defendant. They identified themselves to the police. The police officers explained they were looking for a

juvenile who was the woman's son. After the woman's husband identified himself, the police recognized him as the registered owner of the car which was sought in connection with the supermarket robbery. The police found the automobile parked outside near the apartment complex. Consequently they detained the occupants of the apartment. Approximately five minutes later two detectives arrived and took over the investigation. After the detectives requested from the woman who was the lessee of the apartment for permission to search the premises, she signed a Consent to Search Form. A .38 caliber revolver, fully loaded with 6 live rounds was recovered during the subsequent search of the apartment.

Defendant and the owner of the car were arrested and taken to the police station. That same night the two cashiers identified the defendant in two separate line-ups as the person who robbed the supermarket.

Defendant was charged with first degree robbery and armed criminal action.

During voir dire, one of the jurors failed to voluntarily reveal that he knew and had dealings with the defense attorney when she was with the circuit attorney's office. However, when this juror was confronted by the defense attorney the following colloquy took place:

MS. GILBERT: Mr. Pietraschke, I used to work for the prosecutor's office and I believe that I met you; that you came in for a warrant application.

JUROR: That is correct.

MS. GILBERT: And that warrant application involved a suspect that you had apprehended, is that correct?

JUROR: Correct again.

MS. GILBERT: Okay. And, actually, I believe that I refused the warrant on the case, didn't I?

JUROR: That is also correct.

MS. GILBERT: How do you think that's going to make you feel sitting on the jury in this case and I'm the lawyer in the case? Do you think that's going to affect the way you approach this?

JUROR: Well, if I may be frank and speak.

MS. GILBERT: Please do so.

JUROR: I mean, first of all, I would feel that bygones have been bygones insofar in the due process of law. All of this was taken care of and that individual was no longer seen. And I feel if I would be permitted to serve as a juror in this particular case I would be fair and impartial. Again, that's the only way I can explain.

MS. GILBERT: Do you think there's any point in the trial that you might hold it against me, the disposition of that case that you were involved in?

JUROR: No, ma'am; I have an open mind.

MS. GILBERT: Okay. I have no other questions of Mr. Pietraschke.

MR. KRAMER: I don't have any questions.

THE COURT: Can you put that experience aside, is that correct?

JUROR: Yes, sir, I surely would, Your Honor.

Defendant moved that this juror be struck for cause; the trial court overruled the motion.

On the last day of trial the defendant's mother claimed she overheard two female jurors discussing the case. She testified that she heard them debating whether there was enough evidence to convict her son. However, she could not clearly identify the jurors. The trial court separately interviewed each of the female jurors as to whether they had violated the instruction not to discuss the case among themselves. All jurors denied doing so. As a result the trial court denied defendant's motion for a mistrial.

The case was submitted to the jury which returned a verdict of guilty on both charges. It is from these convictions defendant now appeals.

Defendant first contends on appeal that the police lacked probable cause to arrest him for the robbery of the supermarket, therefore the clothing which was seized

from him, and the photograph and testimony concerning the line-up identification of him were fruits of the poisonous tree and should have been excluded. We disagree.

An arrest, with or without a warrant requires probable cause, which simply means a knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed an offense … While the quantum of information necessary to fashion probable cause means more than mere suspicion, existence must be determined by practical considerations of everday life on which reasonable persons act and not the hindsight of legal technicians. All information known to the officers and the reasonable inferences therefrom bear on this determination of that issue.

*State v. Heitman,* 589 S.W.2d 249, 253[3–5] (Mo. banc 1979) (cites omitted).

■ Additionally, probable cause is to be determined on the facts available for consideration by the *agencies or officers* participating in the arrest; and the collective knowledge and the available facts are the criteria in assessing probable cause. It is not necessary for the arresting or detaining officer to possess all of the available information. *State v. Morris,* 662 S.W.2d 884, 893[17, 18] (Mo.App.1983).

■ Defendant asserts that the only reason he was arrested in connection with the supermarket robbery was because he was in the company of the owner of the car used in the perpetration of the crime. It is true that mere association with one reasonably suspected of committing a crime is an insufficient basis for arrest; however, this fact may be considered in connection with other circumstances which tend to show probable cause, thereby providing reasonable grounds for arrest. *State v. Seymour,* 438 S.W.2d 161, 163[4, 5] (Mo.1969).

■ When one considers the fact that defendant was found with the owner of the "get away car" approximately five hours after the robbery just two miles away from the scene of the robbery, it was known by the police officers that two negro males were involved in the crime, *and* that defendant fit the general description broadcast over the police radio, it becomes apparent that it was not inconceivable that the police officers who detained the two men would infer that it was highly probable that both men were involved in the robbery. Furthermore, the arresting officer had a detailed description of the robber and determined that defendant was "the same physical stature, same height, approximately the same weight, … appeared to be in his thirties … [and] was wearing a multicolored sweater that … could have been mistaken for a jacket at the time [of] the robbery." In other words, the arresting officer believed defendant closely matched the description given by the witnesses.

The officers who first detained the defendant may not have possessed all the information relevant to the robbery or its perpetrator, but the arresting officer did have the information set out hereinabove. Under the circumstances of this case, and the facts available to the police department and the officers involved, there was ample justification and probable cause for a prudent person to arrest defendant in connection with the robbery. Therefore, the clothing seized from defendant as well as the photograph and testimony concerning the line-up identification of him are not the fruit of an unlawful arrest and were properly admitted by the trial court.

Defendant's second contention on appeal asserts that the trial court should not have denied defendant's Motion to Suppress the pre-trial line-up identifications and the subsequent in-court identifications of the two witnesses because of the impermissibly suggestive techniques used in the line-up. Defendant argues that the suggestive procedures undermined the reliability of the in-court identification. We find no merit in this argument.

■ Defendant bases his assertion that the line-up was improperly suggestive on the fact that the other two men presented in the line-up with defendant were much too large to fit the description of the perpe-

trator. The standard by which we determine the prejudicial effect of a pre-trial identification procedure is whether the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *State v. Higgins*, 592 S.W.2d 151, 159[11] (Mo. banc 1979). *See State v. Davis*, 530 S.W.2d 709, 712 (Mo.App.1975). This determination must be made in light of the totality of the surrounding circumstances. *State v. Higgins, supra.*

It would be unreasonable to require participants in a line-up to be identical in appearance or to physically conform to one another. *State v. Haymon*, 639 S.W.2d 843, 845[1] (Mo.App.1982); *State v. Kirk*, 636 S.W.2d 952, 954[5] (Mo.1982).

█ It can not be established that a line-up was unduly suggestive or unfair solely because one of the participants was a different size than the others. *Gaitan v. State*, 464 S.W.2d 33, 35[3] (Mo.1971). Therefore we must look at all of the facts surrounding the line-up. There was no evidence in the record to indicate that the witnesses who identified the defendant were subjected to any suggestive influence. The witnesses specifically state at trial that no comments or actions were made to either of them regarding the identity of the suspect. Furthermore, both witnesses testified that their identifications of defendant were based upon their observations at the time of the crime. Both line-ups occurred within eight hours of the crime, which adds to the reliability of the identification in that the image of the robber was still fresh in the identifiers' minds. Additionally the cashiers both identified defendant unequivocally and without any hesitation.

A three part test was set forth in *State v. Davis*, 529 S.W.2d 10, 13[1] (Mo.App. 1975) by which to examine the totality of the circumstances in pre-trial identification procedures: (1) Is there the presence of an independent basis for identification? (2) Is there an absence of any suggestive influence by others? (3) Was there a positive in-court identification? The totality of the circumstances in this case meets this test.

The witnesses who identified the defendant were both at the scene of the robbery and had sufficient time to observe him; hence an independent basis for identification existed. Both witnesses testified that there were no suggestive gestures made to influence their identification, hence an absence of suggestive influence by others. Thirdly, at trial both witnesses made positive in-court identifications thereby satisfying the last part of the test. The record in this case clearly shows that the line-up procedures used to identify defendant were proper and lacked suggestiveness. Therefore there was little likelihood of irreparable misidentification. As a result the subsequent in-court identifications made by the witnesses were not tainted by the pre-trial procedures, nor was the reliability of them undermined. Consequently the trial court did not err in denying defendant's motion to suppress the pre-trial and in-court identifications.

In his third point on appeal defendant asserts it was prejudicial error to admit into evidence the .38 caliber revolver and the cartridges which were recovered in the search of the apartment where defendant was arrested, and the testimony relating to them in that there was no evidence connecting these items to the defendant or the crime. We find no prejudicial error in this instance.

The trial court has broad discretion in determining the relevancy and admissibility of demonstrative evidence, and will only deny its admission when the evidence is both irrelevant to a material issue and inflamatory or prejudicial. *State v. Murphy*, 610 S.W.2d 382, 385, 386[6] (Mo.App.1980). We find no abuse of discretion.

Defendant contends that there was not a sufficient connection between the gun and the defendant or the crime to warrant its admission probative. The factual basis for this contention is that the gun was found in an apartment where the defendant did not reside, and the identification of the gun at trial was tenuous. We conclude differently.

■ Weapons are admissible into evidence even though they are not directly connected with the defendant when they bear on the crime with which he is charged. *State v. Greathouse*, 519 S.W.2d 299, 302 (Mo.App., 1975). Furthermore, "[w]eapons or objects are properly admitted in a criminal prosecution upon a prima facie showing of identity and connection with the crime charged; *positive proof or unqualified identification is generally not required.*" *State v. Greathouse, supra.* (emphasis added). *See also State v. Hughes*, 596 S.W.2d 723, 728[8] (Mo. banc 1980).

■ Arguably the weapon is only tenuously connected to defendant in that it was recovered from a dwelling where he was arrested, but which was not his residence. However, it was sufficiently connected with the crime. Both witnesses to the robbery identified the weapon as the one used by the perpetrator. The female cashier admitted another gun like the one admitted into evidence might exist but she remained certain it was the one used in the robbery. The male cashier admitted to his inexperience with guns but nonetheless found the handle distinctive and identified it as the same gun he saw the robber use the day of the crime.

These may not classify as unequivocal identifications of the gun but they clearly amount to a prima facie showing of identity and connection with the crime. Therefore we find sufficient grounds for the trial court to admit the gun and the cartridges into evidence. The weight of the witnesses' identification of the gun is for the jury to decide, not the trial judge. *State v. Greathouse, supra* at 303[14].

In defendant's fourth point he claims the trial court's denial of his motion to strike a juror for cause, who failed to reveal prior knowledge of the defense attorney was prejudicial error.

We must review this contention in light of the standard put forth by the Supreme Court: "The trial court has wide discretion in determining the qualifications of a venireman, and its decision thereon will not be disturbed absent a clear abuse of discretion and a real probability of injury to the complaining party." *State v. Smith*, 649 S.W.2d 417, 422[5] (Mo. banc 1983); *State v. Betts*, 646 S.W.2d 94, 98[7] (Mo. banc 1983).

The trial court determines whether a venireperson is qualified to be a juror by observing his demeanor and evaluating and interpreting his answers to the voir dire questions as they relate to his fairness and impartiality, if he would be chosen as a juror. *State v. Bevly*, 665 S.W.2d 46, 48[3] (Mo.App.1984). Although the appellate court need not be blind upon review we must give deference to the trial court's decision as they are in a much better position than the appellate court to make this decision. *Id.* Any doubts as to the trial court's determination will be resolved in its favor on appeal. *State v. Smith, supra*, at 422[7].

■ An accused in a criminal case is entitled to a full panel of qualified jurors before he is required to use his peremptory challenges. It is reversible error for the trial court to deny a legitimate request to excuse for cause a partial or prejudiced venireperson. *State v. Thompson*, 541 S.W.2d 16, 17[2] (Mo.App.1976). However, we find no abuse of the trial court's discretion in denying defendant's request to strike for cause this juror. Initially the venireperson who was the subject of the motion to strike did fail to admit that he knew the defense attorney and had dealt with her previously when she was a prosecutor. A venireperson has the duty to answer all questions during voir dire as fully, fairly, and truthfully as possible. *State v. Scruggs*, 551 S.W.2d 306, 308[1] (Mo.App.1977). Arguably this venireperson did not fully answer the voir dire question. However, the venireperson later admitted these facts but explained it would make no difference in his ability to be impartial. Venirepersons are not to pass upon their own qualifications as jurors, as that is the duty of the trial court. *State v. Thompson, supra* at 18[3]. However, it is not an abuse of discretion for the trial court to take this part of the voir dire examination into consideration along with the demeanor of the venireperson and the

rest of his answers and conclude the veni-reperson would be an impartial juror.

We find no abuse of discretion by the trial court in denying the Motion to Strike for Cause nor do we find any prejudice. Therefore we deny defendant's fourth point on appeal.

■ Defendant's fifth point on appeal concerns the exclusion by the trial court of defendant's young daughter and cousin from the courtroom due to their tendency to disrupt the court proceedings and distract the jury. Although we are sympathetic to the defendant's desire to have his family present during trial we find no error by the trial court or prejudice to the defendant resulting from the exclusion of the young children. There must be order in a courtroom so that the business of the trial can proceed smoothly. Unfortunately children often do not always understand this and can be disruptive. Therefore there was no misconduct on the part of the trial court in excluding the two young children who he felt continuously disturbed the order of the courtroom.

Defendant's final claim on appeal is that the trial court erred in denying defendant's motion for a mistrial when several female jurors were overheard discussing the case before it was submitted to them by the trial court.

The decision to grant or deny a mistrial based on jury misconduct is a matter squarely within the trial court's discretion. *State v. Mitchell*, 651 S.W.2d 637, 639[1] (Mo.App.1983). When there is alleged jury misconduct prior to the submission of the case to the jury the issue to be resolved is whether or not the defendant was prejudiced or a juror was subjected to any improper influences. *State v. Edmondson*, 461 S.W.2d 713, 724[6] (Mo.1971).

Jurors have a statutory obligation not to discuss among themselves any matter relating to the trial prior to the case being formally submitted to them. § 546.230 RSMo 1978. If they fail to uphold this statutory duty it is jury misconduct.

■ However, in the present case there is no clear evidence jury misconduct occurred or that the jury was improperly influenced. Defendant's mother testified she overheard two female jurors discussing whether there was enough evidence to convict her son, but she was unable to specifically identify the jurors which were allegedly involved in the conversation. Moreover, the bailiff who was responsible for the jury testified that he had not observed any improper actions on the part of the jury members. The trial court also interviewed each female juror separately as to whether they had discussed the case before its submission, contrary to the jury instructions. All the female jurors denied doing so. In view of the trial court's diligent effort to ascertain whether jury misconduct took place, and the lack of evidence thereof, we find it was well within the trial court's discretion to deny defendant's motion for a mistrial, and find no prejudice to defendant.

Defendant's verdict and sentence is affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.