STATE of Missouri, Respondent,

v.

William N. MILLER, Appellant.

No. WD 65596.

Missouri Court of Appeals,
Western District.

Nov. 21, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Assistant Attorney General, Jefferson City, MO, for respondent.

Karen Bourgeois, Columbia, MO, for appellant.

Before HOWARD, C.J., and ELLIS and SMITH, JJ.

VICTOR C. HOWARD, Chief Judge.

Defendant William N. Miller was convicted by jury of first-degree robbery with a deadly weapon. He now appeals that conviction. He argues the trial court abused its discretion by admitting into evi-

dence a gun found in a car parked outside his home and by allowing the State to repeatedly employ leading questions during the presentation of its case.

## Background

Miller and two accomplices robbed a convenience store early in the morning of July 15, 2004. The store was equipped with several security cameras; however, Miller wore a mask during the commission of the robbery. Miller and an accomplice used two identical silver semiautomatic handguns to threaten the clerk and three bystanders. A witness noticed and the security camera captured images of Miller's distinctive Nike Air Jordan shoes. The robbers grabbed about $315 out of the cash drawer and left the convenience store.

Police arrested one of Miller's accomplices approximately two weeks after the robbery, and he told the police that Miller was the masked robber. Miller was subsequently arrested and his home searched. At his home police found Nike Air Jordan shoes identical to those worn by the masked robber at the scene of the crime. Police also found several nine-millimeter rounds and an expended cartridge in his bedroom. Police opened a safe in the master bedroom, which contained title to a Buick Riviera parked outside the home. While the title was not in Miller's name, it was found in an envelope addressed to Miller. Miller also exercised control over the car. The police searched the Buick. Hidden in the back seat they found a nine-millimeter Ruger handgun. The gun found in the Buick was consistent with the bystander's limited statements concerning the type of gun used in the robbery. One of the accomplices also said it was "identical" to the gun used at the robbery. The expended shell casing found in Miller's

bedroom had been fired from the gun found in the Buick.

Miller also made incriminating statements in a telephone conversation with his girlfriend while he was incarcerated. She told him the police took his shoes and had shown her pictures of the robbery. His girlfriend said, "I just want to say one thing: I wish you would have listened to me and kept your ass at home." Miller replied, "I wish I would have too. I wish I would have, man. When it pours, it rains. When it rains, it pours. It poured on my ass. It poured on me."

In his defense, Miller introduced evidence that one of his co-conspirators lived with him and had access to the Buick, his shoes, and bedroom. The accomplice had previously entered a guilty plea for the robbery. The other accomplice had committed several other robberies in the area and accepted a plea bargain of twenty years to testify against Miller. Both accomplices thus had substantial motive to implicate Miller.

During trial, the State asked several leading questions of their witnesses. The court sustained several objections and overruled others. Other leading questions attracted no objection from Miller. The court also admitted, over Miller's objection, the gun found in the back seat of the Buick. The State did not introduce explicit, unassailable evidence that Miller owned the gun or that the gun admitted was the gun used during the robbery. After deliberation the jury convicted Miller, and the court sentenced him to thirty years incarceration. After filing a motion for a new trial, he now timely appeals his conviction.

## Admission of the Gun into Evidence

### Standard of Review

■ The admission of evidence at trial will only be disturbed after the ag-

grieved party demonstrates the trial court abused its discretion. *State v. Simmons*, 955 S.W.2d 729, 738 (Mo. banc 1997). An abuse of discretion will be found only where the ruling in question clearly offends the logic of the circumstances or appears arbitrary and unreasonable. *State v. Strughold*, 973 S.W.2d 876, 887 (Mo.App. E.D.1998). Furthermore, error alone will not compel remand. The error must be so prejudicial that it deprived the defendant of a fair trial. *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). The defendant must show a reasonable probability that the verdict would have been different had the prejudicial error not occurred. *State v. Dizer*, 119 S.W.3d 156, 164 (Mo.App. E.D.2003).

## Analysis

■ All evidence admitted must be logically relevant, or make a material fact either more or less probable. *State v. Smith*, 32 S.W.3d 532, 546 (Mo. banc 2000).

> [E]vidence is relevant to show that the accused owned, possessed or had access to tools, implements, or any articles with which the particular crime was or might have been committed, and that he owned or had such weapons in his possession prior to or shortly after the commission of the crime.

*State v. Stancliff*, 467 S.W.2d 26, 30 (Mo. 1971). Furthermore, admissible evidence must be legally relevant. Legally relevant evidence is evidence with a probative value not outweighed by its prejudicial effect.[1] Prejudice in this context refers to confusion of the issues or otherwise misleading the jury. *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992).

■ Miller argues the admission of the gun and related testimony into evidence was an abuse of discretion because it was not logically relevant. He states, "[t]he logical relevancy of the gun is tenuous at best." We disagree. Without doubt, the existence of a gun similar to that used in the robbery in a place under Miller's control makes his identity as the masked robber more likely. The gun found demonstrates that the defendant had greater access to a gun consistent with the description of the gun used during the crime than would be the case had no gun been discovered. "[L]ogical relevance has a very low threshold." *State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002). Each piece of logically relevant evidence need not be a slam-dunk; it must only be evidence which makes a fact of consequence more probable than not. The gun is logically relevant.

---

1. Missouri courts have announced varying standards as to the degree of probative force required to outweigh prejudicial effect. The standard is usually stated in general terms: logically relevant evidence should be excluded "if it brings into a case matters which cause prejudice wholly disproportionate to the value and usefulness of the offered evidence." *State v. Pollard*, 719 S.W.2d 38, 39 (Mo.App. E.D.1986).

 Missouri courts have been vague about the precise showing necessary before relevant evidence should be excluded. Some cases suggest that relevant evidence is only admissible if its probative value outweighs its possible dangers. Other cases suggest that relevant evidence should be admitted unless its probative value is outweighed by its possible dangers. A few cases refer to both standards in the same decision. Still other cases state that relevance is the primary criterion in determining the admissibility of evidence. Finally, a few cases suggest that relevant evidence may be excluded "even if it has some probative value, if it has a disproportionate likelihood of prejudicial impact."

 22 Mo. Practice, Mo. Evidence § 403.1(a) (2nd ed.1999).

 The Missouri Supreme Court found evidence inadmissible where the prejudicial effect "substantially outweighed" the probative force. *State v. Barriner*, 34 S.W.3d 139, 147 (Mo. banc 2000).

■ Whether the gun is legally relevant is a more difficult question. "[L]ogically relevant evidence is excluded if its costs outweigh its benefits." *Id.* at 276. Miller argues the evidence of the gun was not legally relevant because the State produced no conclusive evidence that the gun found in the Buick was the gun used at the scene of the crime. Thus, he says, the jury was left to speculate whether Miller hid the gun in the car or used it in the robbery. He asserts that the unfair prejudice caused by the gun evidence far outweighed any possible probative value.

Miller primarily relies on *State v. Anderson*, 76 S.W.3d 275 (Mo. banc 2002). In that case, the defendant was convicted of robbery and armed criminal action. *Id.* at 276. The State introduced evidence of a gun advertisement found in the defendant's home. *Id.* The type of gun in the advertisement was similar to that used in the crime. *Id.* The Missouri Supreme Court found it was error to admit the advertisement because it was not legally relevant. *Id.* at 277. The court cited the proposition that weapons not used in the commission of the crime are not legally relevant. *Id.* (citing *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294, 299–300 (1944)). The Court reasoned that the jury would be inclined to draw improper inferences if the evidence were admitted. *Id.*

However, *Anderson* is materially dissimilar. In that case, there was absolutely no question that the advertisement found in the defendant's apartment was not used in the commission of a crime. In our case, there is an actual gun with links to both Miller and the crime. The question is how strong those links must be for the State to introduce the gun as the weapon used at the crime.

■ Identifications of weapons need not be unequivocal; however, a sufficient foundation must be laid that the gun introduced is the gun used in the crime so that a juror could find it to be that gun without resort to speculation. "To warrant the admission in evidence of an instrument or weapon as the one with which the crime was committed, a prima facie showing of identity and connection with the crime is necessary and sufficient; clear, certain, and positive proof is not required." 16 C.J. § 1225, at 619 (1918). Less than absolute identifications of real evidence speak to the weight of the evidence, not admissibility. "Weapons are admissible into evidence even though they are not directly connected with the defendant when they bear on the crime with which he is charged ... positive proof or unqualified identification is generally not required." *State v. Young*, 701 S.W.2d 490, 496 (Mo. App. E.D.1985).[2] Furthermore, "[t]he fact that a considerable length of time elapsed after the crime before the weapon or instrument was found, or that in the meantime a third person may have had access thereto, goes to the probative force but not the admissibility of the evidence." 16 C.J. § 1225, at 619. To admit the gun, the State is required to produce a prima facie showing that the gun found was the gun used; it is not required to prove that it was the same gun beyond all reasonable doubt.

---

**2.** The State also states we should employ the standard discussed in *State v. Jones*, 583 S.W.2d 212, 216 (Mo.App. W.D.1979), or the "circumstances of arrest doctrine." That court stated, "A gun found in the possession of an accused which is shown to be the same or similar to the one used in the crime falls squarely within the exception" and is, thus, admissible. *Id.* This rule, however, only applies to the circumstances immediately surrounding the arrest. *Id.* at 215–16. This standard is inapplicable in the current case because the gun was not found in Miller's possession.

In the current case, the State laid sufficient foundation to introduce the gun, tying the gun to Miller and the gun to the crime. One of Miller's accomplices stated the gun produced at trial was "identical" to that used in the robbery. Furthermore, the police found an expended cartridge from the gun found in the Buick in Miller's bedroom. A reasonable juror could have found the gun located in the Buick was Miller's. Miller controlled the car, its license plate was registered to him, and he possessed the title. These facts provided the jury with evidence from which a reasonable inference could be drawn that Miller used the gun in the robbery.

The court did not err in admitting the gun.

### Leading Questions

### Standard of Review

■■■■ Trial courts have great latitude in allowing and forbidding leading questions. *Lewis v. State,* 767 S.W.2d 49, 53 (Mo.App. W.D.1989). We will only overturn their decision if it constituted an abuse of discretion and prejudiced the defendant. *State v. Thomson,* 705 S.W.2d 38, 40 (Mo.App. E.D.1985).

### Analysis

Leading questions suggest the desired answer of material matters to the witness. *State v. Allison,* 845 S.W.2d 642, 648 (Mo. App. W.D.1992). *See also* 3 WIGMORE, EVIDENCE § 769 (Chadbourn rev.1970). Missouri Courts have accepted the proposition that leading questions are generally impermissible. *See Engleking v. Kansas City, Ft. Scott & Memphis R.R. Co.,* 187 Mo. 158, 86 S.W. 89, 90 (1905). Leading question are, however, occasionally permitted

where the witness is shy, timid, or unwilling, *State v. George,* 214 Mo. 262, 113 S.W. 1116, 1118 (1908); where the witness is hostile, *State v. Preston,* 673 S.W.2d 1, 5 (Mo. banc 1984); for preliminary or formal matters, *Hesse v. Wagner,* 475 S.W.2d 55, 62 (Mo.1971); where the witness had difficulty understanding English, *Vodicka v. Sette,* 223 S.W. 578, 581 (Mo.1920); or for where the answer has already been produced and the attorney is merely repeating that answer, *Boulos v. Kansas City Pub. Serv. Co.,* 359 Mo. 763, 223 S.W.2d 446, 451–52 (1949).

Most of the offending leading questioning in the current case occurred when the State questioned police officers on direct examination. Miller's primary complaint centers on the examination of Officer Lee.[3]

■■■■ Error generally must be properly preserved for our review. We first examine the preserved claim of error relating to Officer Lee's testimony concerning Officer Kelly and the Nike Air Jordan shoes. That examination proceeded as follows:

Q: Just to back up, [Officer] Kelly observed—he observed still photos that were taken from the Petro Mart robbery; is that right?

A: That's correct.

Q: And his—he immediately was alerted to the fact that those shoes looked like the stills from the Petro Mart; correct?

A: That's correct.

Q: Okay. Based on that, you contacted Detective John Short from the Columbia Police Department?

A: Correct.

Q: All right.

---

**3.** Miller's brief does not cite to the record for other offending instances of leading questions. We choose not to scour the record for other preserved instances of offending leading questions. *See* Missouri Supreme Court Rule 84.04(i) (2006).

[Miller's Counsel]: Objection, your Honor. Leading questions. He's testifying. The Court: Well, the objection will be overruled. I think we're rehashing what we've already testified to. Now, if you you'll [sic] ask a question.

The testimony in question was a restatement of testimony already given by Officer Lee. It falls squarely within the exception of *Boulos*, or testimony already given. *See also* 98 C.J.S. § 420, at 392 (2002) ("A question is not rendered objectionable as leading because it embodies a fact already testified to by the witness."). Prior to the objected-to testimony, the same information was presented to the jury. Miller then objected on an unrelated point. The State immediately began questioning again, in a leading form, on matters already covered. There was no trial error in overruling Miller's objection to this leading question.

 Miller did not object to the remaining examples of leading questions.[4] The trial court is entitled to multiple opportunities to correct its own mistakes prior to our review. Miller did not afford this

---

4. The remaining leading questions cited by Miller drew no objection during trial:

Q: Okay. When Officer Short brought these still photographs of the robbery, when he brought those to this trailer, Number 35, who did he show those to other than a police officer, other than police officers?
A: Krista Brown [Defendant's Girlfriend].
Q: Okay. And what did police officers tell Krista Brown about this robbery?
A: I'm not sure I understand your question.
Q: Okay. Did police officers tell Krista Brown the date that this robbery was committed?
A: Yes. We told her the date and time that it was committed and the location that it was committed.
Q: July 15th, about a little after 1:00; is that correct?
A: That's correct.
Q: Over at Petro Mart, Falling Leaf Lane. All that information was explained to Krista Brown; is that correct?
A: Yes it was.
Q: Okay. And actual photos of the robbery being committed were shown to her; is that correct?
A: That is correct.
Q: Including guns being displayed; is that right?
A: That is correct.
Q: And both of the individuals; is that right?
A: That's correct.
Q: And one person with a mask and one person without a mask?
A: Yes.
Q: Okay. And did the police officers also explain to Krista Brown that the defendant, William Miller, her boyfriend, was the person police suspected of having the mask on?
A: Yes, we did.
Q: And did you also explain to Krista Brown that Lonnie Brookins [an accomplice] was the person that you suspected had the fishing hat on?
A: Yes, we did.
Q: And once again, this search and the time that you talked to Krista Brown was about two weeks after this robbery; right?
A: That's correct.
Q: Okay. And you were responsible, weren't you, for collecting the evidence there at that residence?
A: Yes, I was.
. . . .
Q: So Krista Brown told you that the defendant, William Miller, was the only person that—other than herself, that had access to the bedroom where these items [shells and casing] were found?
A: That's correct.
Q: This master bedroom right back here; correct?
A: Correct. She told us it was his bedroom and that that's where he slept and stayed.
Q: She didn't say anything about Lonnie Brookins having access to that room?
A: No, she did not.
Q: Okay. As a matter of fact, she didn't say anything about Lonnie Brookins having access to any part of the trailer?
A: No. Mr. Miller's name was the only one brought to our attention in terms of being a resident or access to the trailer when we were speaking to her.

opportunity to the trial court, and we are thus permitted to review for plain error only. We decline, as permitted by Missouri Supreme Court Rule 30.20, because Miller's claim does not facially establish substantial grounds for believing manifest injustice or a miscarriage of justice. *State v. Rogers*, 51 S.W.3d 879, 880 (Mo.App. W.D.2001). The State has admitted considerable evidence, which tends to show Miller was, in fact, the masked robber and the leading questions more than likely had minimal prejudicial impact on the jury. *State v. Rousan*, 961 S.W.2d 831, 843 (Mo. banc 1998). Miller does not argue, nor do we believe, that the leading questions amounted to a miscarriage of justice. *State v. Mabery*, 437 S.W.2d 91, 93 (Mo. 1969).

The trial court did not abuse its discretion, nor did it plainly err by allowing the State to employ leading questions.

### Conclusion

For the reasons stated above, the judgment is affirmed.

ELLIS and SMITH, JJ., concur.