**STATE of Missouri, Plaintiff–
Respondent,**

**v.**

**Eddie Wayne SMITH, Defendant–
Appellant.**

**No. SD 30150.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 8, 2010.

Motion for Rehearing or Transfer
Denied Dec. 28, 2010.

Application for Transfer
Denied March 1, 2011.

Christopher L. Yarbro, Poplar Bluff, MO, for Appellant.

Chris Koster, Atty. General, James B. Farnsworth, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

■ Eddie Wayne Smith ("Appellant") was convicted by a jury of one count of enticement of a child in violation of section 566.151 and one count of attempted statutory rape in the first degree in violation of sections 564.011 and 566.032.[1] The court, consistent with the jury's recommendations, sentenced Appellant to seven years on the enticement charge and three years on the attempt charge,[2] to be served consecutively. Appellant brings four points

---

1. All references to section 566.151 and section 566.032 are to RSMo Cum.Supp.2006. All other references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules (2010), unless otherwise specified.

2. The minimum mandatory sentence for attempted statutory rape in the first degree is five years. Section 566.032.2. The State filed a motion to dismiss this appeal on the grounds that there has not been a final judg-

ment because the trial court entered a sentence inconsistent with the statutory minimum sentence proscribed in section 566.032.2. For the purposes of an appeal, a criminal judgment is final when the judgment and sentence are entered, regardless of whether the sentence is for a term below the statutory minimum sentence. *State v. Johnson*, 237 S.W.3d 277, 281–82 (Mo.App. E.D. 2007). Accordingly, we deny the State's motion and will address the merits on appeal.

on appeal. He claims: (1) the trial court admitted certain text messages into evidence that are not relevant to the charges; (2) a variance between the Amended Information and the verdict directing instructions prejudiced him; (3) the records of a cell phone were admitted without proper foundation; and (4) the trial court erred in denying two motions for continuance. We find no reversible error as to the enticement charge and affirm that conviction, but reverse and remand the conviction on the attempted statutory rape in the first degree charge.

Viewed in the light most favorable to the verdict, the evidence shows that on November 8, 2008, D.P., a twelve-year-old, received an anonymous text message on her cell phone that read "who is this?" D.P. responded "who is this?" The sender replied "Jeff Scott." D.P. did not know a Jeff Scott. After these messages were exchanged, D.P.'s stepmother confiscated D.P.'s phone because D.P. did not complete her chores. While D.P.'s stepmother had the phone, Jeff Scott sent several additional text messages to D.P.'s phone that were "inappropriate for conversation with a twelve-year-old." In one text message sent to D.P. while D.P.'s stepmother had the phone, Jeff Scott indicated that he knew D.P.'s father and was aware that D.P. "wasn't but like thirteen." When D.P.'s father returned home, D.P.'s stepmother showed him the messages. After failing to discover who "Jeff Scott" was, D.P.'s father turned the phone over to the police for further investigation.

Lieutenant–Detective Tim Trowbridge of the Kennett Police Department continued the investigation by exchanging a series of text messages with Jeff Scott while pretending to be D.P. between November 9 and November 16, 2008. Detective Trowbridge sent a message to Jeff Scott saying "I'm fourteen, I thought you knew that." During the entire investigation and phone conversations, Detective Trowbridge mistakenly thought D.P. was fourteen years old although she was actually twelve years old. Jeff Scott replied: "Yes, since you are only fourteen, I can wait for you and think of you." Jeff Scott sent several explicit text messages to D.P.'s cell phone between November 9 and November 16. This includes the following messages: (1) "It been [sic] a long time since I been [sic] a fourteen old [sic]. I are [sic] daddy."; and (2) "Don't you know a forty-six old [sic] man could get a jail time for having sex with a fourteen year grill [sic]."

Ultimately, on November 16, 2008, Detective Trowbridge, posing as D.P., arranged to meet the man calling himself Jeff Scott in person at the parking lot of a local store named Fred's. That same day, Detective Trowbridge called Jeff Scott, masked his voice pretending to be a teenage girl, and asked Jeff Scott what he would be driving. Jeff Scott said he would be in a white van. The police then set up surveillance at the agreed upon meeting point. When they spotted a white van drive slowly past the meeting point, then double back and drive past again, they stopped the vehicle. Appellant was behind the wheel when the van was stopped. Detective Trowbridge opened the van door and asked Appellant to exit the vehicle. Appellant was hesitant and kept repeating that he was sorry that he "messed up" and wanted to go home. Appellant was arrested for enticement of a child. Detective Trowbridge then dialed the number for Jeff Scott from D.P.'s phone, and heard a phone ringing in the back of Appellant's van. The police retrieved the phone, which was the same phone "Jeff Scott" had been using to communicate with D.P.'s phone.

After being given the Miranda warning, Appellant admitted he knew D.P. was four-

teen and that, posing as Jeff Scott, he was planning on having sex with her. Months later, Appellant wrote a letter of apology in which he stated that he knew the girl was "fourteen years of age" and that he was "truly sorry for everything that happened between me sending texts to the girl." At trial, Appellant presented no evidence. His defense strategy was that only three text messages were actually exchanged between himself and D.P., as opposed to a law enforcement officer posing as D.P., and that those three messages were insufficient to constitute the enticement of, or a substantial step toward committing the attempted statutory rape of, D.P. The jury found Appellant guilty on both counts, and the court, consistent with the jury's recommendations, sentenced Defendant to consecutive terms of seven years of imprisonment for enticement of a child, and three years for attempted statutory rape in the first degree.

Appellant first claims the trial court admitted into evidence certain text messages not relevant to the crimes charged. A trial court has broad discretion in deciding whether to admit or exclude evidence, and its ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Madison,* 302 S.W.3d 763, 768 (Mo.App. S.D.2010). A decision to admit evidence constitutes an abuse of discretion when the decision is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. *State v. Placke,* 290 S.W.3d 145, 153 (Mo.App. S.D.2009).

Relevance has two tiers, logical and legal. *State v. Anderson,* 76 S.W.3d 275, 276 (Mo. banc 2002). "Evidence is logically relevant if it tends to make the existence of a material fact more or less

probable." *Id.* If logically relevant evidence is legally relevant, it is admissible. *Id.* "Legal relevance weighs the probative value of the evidence against its costs-unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* If the cost of logically relevant evidence outweighs its benefits, the evidence is excluded. *Id.*

We shall first address Appellant's claim of error as it relates to Count I of the Amended Information. Count I charges Appellant with the enticement of a child in violation of section 566.151, which provides:

> A person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

Section 566.151.1. The text messages are logically relevant because they tend to make the existence of a material fact more or less probable. The messages are highly probative on the issue of whether Appellant was enticing D.P. for the purpose of engaging in sexual conduct with her. Appellant was soliciting, coaxing, enticing, or luring someone he believed to be under the age of fifteen years of age to engage in sexual conduct. Likewise, the text messages are legally relevant as the benefits of allowing the messages into evidence clearly outweigh any unfair prejudice Appellant may have faced. In fact, Appellant does not cite any unfair prejudice to him. In short, Appellant sent multiple sexually explicit text messages to D.P.'s phone between November 9 and November 16,

2008.[3] These text messages were clearly both logically and legally relevant to Count I of the Amended Information.

Because the messages were relevant to Count I of the Amended Information we do not need to address whether they were relevant to the second count as there was no request for any limiting instruction that the evidence only be considered as to Count I. Point I is denied.

■ Appellant next claims error and prejudice by the variance between the Amended Information and the verdict director. Again, we shall address his claim as to Count I. Count I of the Amended Information charged Appellant with soliciting, coaxing, or enticing "D.P. . . . by text messaging [her] for the purpose of engaging in sexual conduct with her." Instruction No. 6, the verdict director for the enticement charge, instructed the jury to find Appellant guilty if the jury believed from the evidence beyond a reasonable doubt that Appellant solicited "[D.P.] and/or [Detective] Trowbridge posing as [D.P.] by sending her sexually explicit messages urging her to meet him to engage in sexual conduct. . . ."

■ The main purpose of an information is to put the accused on notice of the charges so that the accused can prepare a defense. *State v. Ellis,* 853 S.W.2d 440, 443 (Mo.App. E.D.1993). A variance between the charging information and the verdict directing instruction exists where the instruction submits a method of committing the offense that is different from the method charged in the information. *Id.* A method is "a way, technique, or

process of or for doing something[.]" [4] Appellant was charged with the crime of enticing a child by sending text messages to D.P.'s cell phone to entice her to have sexual conduct with him. The verdict director contended Appellant committed the crime of enticement of a child by sending the messages. The legislature has determined that "[i]t is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor." Section 566.151.2. That the result of the method used to commit the crime was different because some of the messages sent to D.P.'s phone were intercepted by a police officer posing as D.P. does not change the method by which the result, completion of the crime, was reached. There was no variance between the charging instrument and the verdict director for Count I. Appellant was on notice by the charge that Detective Trowbridge's messages would be considered for this crime.

■ There was, however, a variance between the charging document and the verdict director in Count II. Count II of the Amended Information, the attempted statutory rape count, charged Appellant with sending "multiple text messages to D.P. . . . to encourage her to meet him and have sexual intercourse . . . and such conduct was a substantial step towards the commission of statutory rape in the first degree. . . ." The associated verdict director, Instruction No. 7, instructed the jury to find Appellant guilty if the jury believed from the evidence beyond a rea-

---

**3.** The following serve as examples of the content of the text messages Appellant sent to D.P.'s phone: (1) "It been [sic] a long time since I been [sic] a fourteen old [sic]. I are [sic] daddy."; (2) When D.P. asked "So you coming or not?" Jeff Scott replied: "Yes, and I got seven rubbers."; and (3) "Don't you

know a forty-six old [sic] man could get a jail time for having sex with a fourteen year grill [sic]. It will be good to have sex to find out how I rate."

**4.** Merriam-Webster's Collegiate Dictionary 781 (11th ed.2005).

sonable doubt that Appellant sent text messages to

[D.P.] and/or [Detective] Trowbridge encouraging [D.P.] to meet [Appellant] and engage in sexual intercourse ... and arranged a meeting with [D.P.] and/or [Detective] Trowbridge....

. . . .

A person commits the crime of statutory rape in the first degree when he has sexual intercourse with another person who is less than fourteen years old[.]

Attempted statutory rape in the first degree occurs where a subject, with the purpose of committing the offense, takes a substantial step towards having "sexual intercourse with another person who is less than fourteen years old." Sections 566.032.1; 564.011.1. Further, "[i]t is no defense to a prosecution under this section that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be." Section 564.011.2. In other words, Appellant was charged with sending multiple text messages to D.P. to encourage her to meet him and have sexual intercourse and such conduct was a substantial step towards commission of statutory rape in the first degree. As noted, statutory rape in the first degree provides that the victim must be less than fourteen years old. The victim was under fourteen years. Had the verdict director simply stated that Appellant sent text messages to D.P. to encourage her to engage in sexual intercourse with him, there would have been no variance between the Amended Information and the instruction.

The problem with that submission was that no messages were sent to D.P. to encourage her to have sexual intercourse with him. The messages to D.P. were "who is this" and "Jeff Scott." The jury could not convict Appellant of attempted statutory rape in the first degree for those messages to a child under fourteen years of age. The jury could convict Appellant of attempted statutory rape in the first degree if Appellant believed the circumstances to be that D.P. was under fourteen. Those are not the facts of this case. The conversations between Detective Trowbridge and Appellant indicate that Appellant believed the victim to be fourteen years of age, not under fourteen years old, because Detective Trowbridge stated he was fourteen in talking to Appellant. Detective Trowbridge mistakenly believed D.P. was fourteen.[5] In the letter of apology Appellant wrote, he explained that knew the girl was "fourteen years of age" and that he was "truly sorry for everything that happened between me sending texts to the girl." The prosecutor contended the victim was twelve years of age, but stated that Appellant acknowledged that he understood and knew that D.P., or the person he was texting, was fourteen years of age. Appellant did not send any sexually explicit messages to a person under the age of fourteen or attempt to have sexual intercourse with a person under the age of fourteen or even with a person [the actor] he believed to be under the age of fourteen. Rather, simple greetings were sent to an actual twelve-year-old and sexually explicit messages, which provided the evidence on the charge of attempted statutory rape in the first degree, were sent to an officer posing as a fourteen-year-old, as opposed to an officer posing as a less than fourteen-year-old.

---

5. As an example, one message Appellant sent to D.P.'s phone read: "Yes, since you are only fourteen, I can wait for you and think of you."

Therefore, Appellant could not have committed attempted statutory rape in the first degree "had the attendant circumstances been as the actor believed them to be." Section 564.011.2; 566.023.1. The verdict director allowed the jury to find Appellant guilty of attempted statutory rape in the first degree based on the text messages sent to someone posing as a fourteen-year-old. The Amended Information varied from the verdict director by allowing the acts of Detective Trowbridge, posing as a fourteen year old, to be considered by the jury on the charge of attempted statutory rape in the first degree. Point II is granted.[6]

 The proper remedy where a conviction on the greater offense is vacated on the grounds of insufficient evidence is to remand for entry of a judgment of conviction of the lesser charge where the evidence is sufficient to support conviction of the lesser included offense and all elements necessary for conviction of the lesser charge were either found by the jury or undisputed. *State v. Whalen,* 49 S.W.3d 181, 187–88 (Mo. banc 2001). In this case, all elements of the lesser offense, attempted statutory rape in the second degree, were explicitly found by the jury in finding Appellant guilty of Count I, enticement of a child, when coupled with their determination of guilt as to Count II, attempted statutory rape in the first degree. Lesser included offenses are defined in section 556.046.1, RSMo Cum.Supp.2001, which reads:

1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when:

(1) It is established by proof of the same or less than all the facts required

to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; ·or

(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Section 556.046.1; *State v. Shipley,* 920 S.W.2d 120, 122 (Mo.App. E.D.1996). "Section 556.046 is a legislative determination that an offense can be a lesser offense of another offense so that a charge of the greater will support a conviction of the lesser although the lesser is not necessarily included in the greater...." *State v. Wilkerson,* 616 S.W.2d 829, 833 (Mo. banc 1981). Subsection (2) clearly applies here.

Attempted statutory rape in the second degree is specifically designated by statute as a lesser degree of attempted statutory rape in the first degree. *See State v. Dixon,* 70 S.W.3d 540, 547 (Mo.App. W.D. 2002) (second degree statutory rape and sodomy are lesser degree offenses of first degree statutory rape and sodomy). Accordingly, the second degree offense is, by statute, a lesser offense of attempted statutory rape in the first degree. We recognize that attempted statutory rape in the second degree requires different age elements from those required for attempted statutory rape in the first degree. Section 566.034.1. More specifically, for attempted statutory rape in the second degree, at the time the offense was committed, the defendant must have been "twenty-one years of age or older" and the victim must have been "less than seventeen years of age." *Id., c.f.,* section 566.032 (statute criminalizing statutory rape in the first degree, which provides that "[a] person commits the crime of statutory rape in the first degree if he has sexual intercourse

---

6. As noted, this analysis has no application to Count I, the enticement charge, which ad-

dresses persons less than fifteen years of age. Section 566.151.1.

with another person who is less than fourteen years old.").

In finding Appellant guilty of enticement of a child in violation of section 566.151, the jury specifically found Appellant was "at least twenty-one years of age or older" and committed the crime of enticement of a child by soliciting "any person who is less than fifteen years of age for the purpose of engaging in sexual conduct." Section 566.151.[7] Correspondingly, as discussed, attempted statutory rape in the second degree contains age requirements of the victim, or intended target, and the defendant, that are consistent with a finding of guilt on the enticement of a child charge. Sections 566.034.1; 566.151.1. Explicit in the jury's determination of Appellant's guilt on the enticement of a child charge and attempted statutory rape in the first degree charge, are the following findings: (1) Appellant was twenty-one years of age or older at the time of the crimes; (2) the victim or officer masquerading as the victim, was less than, or pretending to be less than, fifteen years of age at the time of the crime; and (3) Appellant attempted to have sexual intercourse with the victim, or officer masquerading as the fourteen-year-old victim, in that statutory rape in the second degree "could have been committed had the attendant circumstances been as the actor believed them to be." Section 564.011.2. Therefore, the jury found all the elements necessary for conviction of attempted statutory rape in the second degree. The proper remedy is for this Court to remand the case with directions to vacate the judgment and sentence for statutory rape in

the first degree, to enter judgment reflecting a conviction on the lesser charge of attempted statutory rape in the second degree, and to sentence Appellant accordingly. *Whalen,* 49 S.W.3d at 187–88.

In his third point, Appellant argues that the trial court erred in overruling his foundational objections to both D.P.'s cell phone and the text message records offered by the State. Appellant contends that the State failed to establish that the phone and records were in the same condition at trial as they were when the offense occurred because Detective Trowbridge had to erase certain text messages, not relevant to the case, from D.P.'s phone, to free up memory for new text messages received from Appellant.

 "Whether a sufficient foundation has been established for an exhibit is a decision within the broad discretion of the trial court." *State v. Minner,* 256 S.W.3d 92, 97 (Mo. banc 2008). " '[I]n matters involving the admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.' " *State v. Bisher,* 255 S.W.3d 29, 33 (Mo.App. S.D.2008) (quoting *State v. Harrison,* 24 S.W.3d 215, 218 (Mo.App. W.D.2000)).

 "For a physical exhibit to be admitted as real evidence, foundation testimony must provide a reasonable assurance that the exhibit sought to be introduced is the same article and is in the same condition as when received by the state." *State v. Strughold,* 973 S.W.2d 876, 886 (Mo.App.

7. Section 566.151 states in pertinent part,

1. A person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communi-

cation, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

2. It is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor.

E.D.1998). However, where the significance of the object sought to be introduced is merely that it was used in the crime, its condition at trial is irrelevant. *State v. Jackson*, 738 S.W.2d 510, 512 (Mo.App. E.D.1987) (finding that "the significant factor in this case is the use of the screwdriver in the burglary" and the condition of the screwdriver identified as having been used in the burglary is irrelevant to its admissibility at trial). Admission in evidence of an instrument, such as the one with which the crime was committed, is warranted when a prima facie showing of identity and connection with the crime is made; " 'clear, certain and positive proof is not required.' " *State v. Miller*, 208 S.W.3d 284, 288–89 (Mo.App. W.D.2006) (quoting 16 C.J.S. *Evidence* § 1225 (1918)) (Testimony describing a gun as "identical" to one used in charged robbery was sufficient to support the gun's admissibility.).

■ Here, the State offered the cell phone itself into evidence for the purpose of allowing D.P. and Detective Trowbridge to identify it as the phone with which they received messages from Appellant and to allow Jamie Jones, an intelligence analyst assigned to the Southeast Missouri Drug Task Force, to testify that it was the phone from which he retrieved the text messages reflected in his reports. Appellant argues that the content of the phone had changed between the time of the offense and the time of trial, in part, because Detective Trowbridge deleted certain text messages not relevant to the case to free up phone memory. This argument is misplaced. The content of the text messages, not the content of the phone, is the relevant evidence here. D.P.'s cell phone, like the screwdriver in *Jackson* and the gun in *Miller*, is significant here only as an instrument of the crime. Testimony by D.P. and Detective Trowbridge, identifying the cell phone as the one on which the messages were received from Appellant, serves as sufficient foundation for its admissibility. *Jackson*, 738 S.W.2d at 512; *Miller*, 208 S.W.3d at 288–89.

■ Likewise, the trial court did not err in admitting the text message records as the State laid adequate foundation for the admissibility of records through the testimony of intelligence analyst Jones. The exhibits that contained the substance of the text messages, State's Exhibits 3 and 4, were photographs that Jones took of the messages contained on D.P.'s phone. A photograph must fairly and accurately represent the scene that it depicts and bear on an element of the charged offense to be admissible. *State v. Stevens*, 304 S.W.3d 139, 140 (Mo.App. S.D.2009). Appellant's objection to the text message records is identical to his objection to admission of the cell phone. He claims the State "failed to offer any evidence as to whether the cell phone was in the same condition as when it was obtained." That is not the issue. The issue is whether the text messages were in a similar condition "at the time of introduction as when received." *State v. Jones*, 204 S.W.3d 287, 296 (Mo. App. S.D.2006). Jones, the intelligence analyst, testified that each text message reproduced in his reports was unaltered and had been automatically stamped with the time it had been sent or received. The text message reports were simply photographs that Jones testified fairly and accurately depicted the messages retrieved form the phone. The State clearly established the authenticity of the text messages. Point III is denied.

■ In his fourth, and final, point on appeal, Appellant contends the trial court abused its discretion in denying Appellant's final two motions for continuances. Appellant was charged in this case on January 14, 2009. That same day, Appellant's initial attorney entered his appearance and

waived arraignment. On July 27, 2009, Appellant retained new counsel. That same day the new counsel entered his appearance and filed a written motion for a continuance, noting that the case was set for trial six weeks later on September 11, 2009. In the motion, counsel alleged he had not yet received discovery in the case, had yet to depose any witnesses, and anticipated that he would be preparing pretrial motions. Two weeks later, the trial court held a hearing at which Appellant argued his motion for continuance. The trial court, noting that counsel had received discovery, denied the motion.

On August 26, 2009, the court held another hearing. At the hearing, the parties discussed final disclosure issues, and Appellant filed a series of suppression motions. Appellant then made an oral motion that the trial be continued for a few weeks because he had received a significant amount of discovery, had five witnesses left to depose, and had began to prepare more motions to suppress and a motion in limine that could not be completed until the depositions had been conducted. The trial court denied Appellant's motion.

A pre-trial conference was held the day before trial, on September 10, 2009, at which Appellant presented numerous motions in limine and litigated his motions to suppress. At neither the September 10, 2009 pre-trial conference, nor the trial itself, did Appellant's counsel claim that he was unprepared for trial.

 "The decision to grant or deny a continuance is within the sound discretion of the trial court." *State v. Middleton*, 995 S.W.2d 443, 464 (Mo. banc 1999). For relief to be granted for an alleged improper denial of a continuance, a criminal defendant must present "[a] very strong showing of abuse and prejudice." *State v. Taylor*, 944 S.W.2d 925, 930 (Mo. banc 1997). Furthermore, "[i]nadequate prepa-

ration does not justify a continuance where counsel had ample opportunity to prepare." *Id.*

The record shows that Appellant's counsel managed to accomplish nearly every task in the six weeks before trial that he originally claimed would necessitate a continuance. In his July 27, 2009 motion, counsel said that he needed a continuance so that he could obtain discovery from the State, depose witnesses, and prepare and file pretrial motions. But by August 26, 2009, when his second motion for continuance was made, counsel had already received "substantial discovery," deposed two witnesses, scheduled depositions for the remaining five witnesses, and had begun preparing his final pre-trial motions. Likewise, at the final pre-trial conference on September 10, 2009, defense counsel was apparently satisfied with his preparation. He filed and argued numerous motions, including a suppression motion requiring the presentation of evidence, but never indicated that he needed additional time to adequately prepare for trial. When trial began the next morning, counsel handled last-minute pre-trial matters with the court, and again did not request a continuance or suggest that the defense lacked adequate preparation.

In *State v. Wade*, 666 S.W.2d 869 (Mo. App. E.D.1984), the Eastern District of this Court found no prejudice from the denial of a continuance where trial counsel had less time to prepare than Appellant's counsel in this case. Defense counsel in *Wade* assumed responsibility for the defendant's case three weeks before trial. *Id.* at 870. Before trial she unsuccessfully sought a continuance, and she renewed her motion for a continuance on the morning of the trial. *Id.* In presenting her motion, trial counsel in *Wade* described her lack of preparation: she had not interviewed any of the State's witnesses; had not spoken

with the co-defendant; and had not visited the scene of the crime. *Id.* Nonetheless, the court concluded that the defendant in *Wade* was not prejudiced from the denial of the motions for continuance. *Id.* at 870–71. In particular, the court relied on the record showing that defense counsel cross-examined the State's witnesses "extensively and effectively" and "represented her client intelligently and zealously." *Id.*

Appellant's counsel, on the other hand, was far more prepared for trial than the counsel in *Wade. Id.* at 870. Counsel deposed each of the State's witnesses prior to trial, conducted extensive discovery, and filed and argued a number of pre-trial motions on Appellant's behalf. Along the same lines, defense counsel consistently displayed mastery of the facts at issue when cross-examining each of the State's witnesses at trial. Appellant suggests he may have entertained alternative defenses if he had more time to prepare for trial, such as "entrapment or alibi." However, after an extensive review of the record, we see nothing to suggest that a lack of time, rather than lack of factual support, prevented Appellant from pursuing those defenses.

Appellant's counsel entered his appearance on this case six weeks from the scheduled start date of the trial. The guilt phase of the trial lasted exactly one day in which seven prosecution witnesses testified. If Appellant's counsel thought six weeks was an insufficient amount of time to prepare an adequate defense, representation should have been declined. Appellant has failed to make a showing, much less a "very strong showing," that the trial court abused his discretion or that he was prejudiced in any meaningful way. *Taylor*, 944 S.W.2d at 930. Point IV is denied.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with directions to vacate Ap-

pellant's conviction and sentence for attempted statutory rape in the first degree, to enter judgment of conviction on one count of attempted statutory rape in the second degree, and to sentence Appellant accordingly.

SCOTT, C.J., concurs in result only.

FRANCIS, J., concurs.