**STATE of Missouri, Respondent,**

v.

**Donald R. CANNON, Jr., Appellant.**

**No. WD 64784.**

Missouri Court of Appeals,
Western District.

Feb. 27, 2007.

Ruth Sanders, Esq., Kansas City, MO, for appellant.

Shaun J. Mackelprang, Esq., Jefferson City, MO, for respondent.

Before ELLIS, P.J., LOWENSTEIN and SPINDEN, JJ.

HAROLD L. LOWENSTEIN, Judge.

Donald R. Cannon, Jr., appeals his conviction, after a jury trial, for second degree murder and armed criminal action. Cannon contends the trial court abused its discretion in admitting the recording of a 911 emergency call by a witness as being in violation of his rights under the Sixth Amendment Confrontation Clause. He further argues that the trial court erred in admitting evidence that he had threatened a witness. This court, relying on recent cases from the United States Supreme Court and the Supreme Court of Missouri, finds the statements made during a 911 call were not testimonial and, therefore, do not implicate the Confrontation Clause of the Sixth Amendment. Further, evidence of Cannon's threats against a witness was admissible to show consciousness of guilt. Judgment affirmed.

## I. FACTUAL BACKGROUND

On March 23, 2003, in Kansas City, Spurgeon Long and three friends, Antoinette Allen, Donna Scott, and Rodney Smith, were driving on 32nd Street, a one-way street lined on both sides with parked cars. A Lexus driven by Shanita Hamilton attempted to pass but cut back too sharply and collided with the front of Long's car. The drivers pulled their vehicles over to the side of the road and everyone got out of the car. Long offered Hamilton his insurance and driver's license and told her to call the police to make a report. Rather than call the police, Hamilton began to make cell phone calls to various individuals, including her brother and her mother, stating that Long had just hit her car. Long again asked Hamilton to call the police but she continued to disregard his request and placed calls to others. Hamilton claimed that Long had hit her car and that Long would have to pay for the car. Scott told Hamilton that she had caused the accident.

A crowd began to gather in the street around the vehicles. Although Long remained calm, Hamilton's voice began to rise. She continued to call individuals on her cell phone and spoke with members of the crowd. Someone came out of a home with a cordless phone and Scott used the phone to call the police. Emma Bradford, a neighborhood resident, called the police to report that a crowd of people, some with guns, was gathering, and later called to report the shooting.

Although witnesses reported that Long remained calm, at some point he said, "Bitch, you hit my car." Hamilton's teen-age brother Chucky, part of the growing crowd, asked if anyone was starting problems with his sister. Chucky raised his shirt to reveal a gun tucked in his waistband. He approached Long and said, "You are not going to call my sister a bitch." Long said, "Get out of my face" and tapped Chucky's baseball cap with three fingers, knocking it down over his eyes. When Chucky pulled the gun from his waistband, Long told Chucky that if he pulled a gun he needed to use it. Chucky tucked the gun back into his waistband and ran back to the crowd. Chucky's older brother, Donald R. Cannon, Jr., the appellant, signaled to Chucky to bring him the gun, saying "You pussy, you can't pull no gun and not use it." Cannon took the gun from Chucky.

Given the growing crowd and the presence of at least one weapon, Long and his

friends decided to leave the scene. Instead of going with his friends, Smith chose to walk home. Scott urged Long to leave and the three returned to the car. Someone in the crowd said, "As soon as he get in the car and drive up, light it up," evidently intending to shoot at the car. The car only made it as far as the corner before breaking down. Afraid that someone would vandalize his car, Long did not want to leave the vehicle. Scott told him they needed to go someplace and call the police; she began walking up the block. Allen tried to convince Long to come with them.

Long began locking his car and rolling up the windows. The crowd, now approximately fifty strong, began to walk up the street behind Michelle Miller, Hamilton's mother. Miller struck Long's car with a large wooden stick she was carrying; she then struck Long across the head or right shoulder as Long leaned into the car to lock the doors. Long grabbed an auto-theft prevention device from the car and began to turn. The crowd, including Hamilton and Mitchell, scattered.

Hamilton's other brother, Donald Cannon, came up behind Long. Long did not confront Cannon and likely did not even see him. With Chucky's gun in hand, Cannon shot Long once in the back of the head, stuck the gun in his waistband and ran away. Scott and Allen ran back to Long and urged him to get up. When Long could not push himself up, Scott and Allen left.

An ambulance transported Long to the hospital where he later died. He suffered a single gunshot wound to the back left side of his head and abrasions to his face. An autopsy revealed that the gun was at least two or three feet from Long's head when it was fired. An abrasion on the top and side of Long's head were consistent with being struck by an object.

Cannon was tried before a jury on charges of second-degree murder and armed criminal action. Cannon admitted that he shot Long but claimed he did so in defense of his mother, Michelle Miller. The jury returned a verdict of guilty on both charges. Cannon was sentenced to seventeen years imprisonment for second degree murder and three years for armed criminal action.

## II. Standard of Review

■ Cannon raises two points of error as to the admission of evidence at trial. The decision of the trial court to admit or exclude evidence will be affirmed by this court absent a clear abuse of discretion. *State v. Miller*, 208 S.W.3d 284, 286–87 (Mo.App.2006). An abuse of discretion is found where the court's ruling "clearly offends the logic of the circumstances or appears arbitrary and unreasonable.'" *State v. Hawkins*, 58 S.W.3d 12, 24 (Mo. App.2001) (citation omitted). Error alone is not sufficient to compel remand but rather must be so prejudicial as to deprive the defendant of a fair trial. *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). Prejudice is found where the defendant shows a reasonable probability that but for the prejudicial error the verdict would have been different. *Miller*, 208 S.W.3d at 287.

## III. Analysis

### A. Admission of the first 911 call does not violate the Sixth Amendment Confrontation Clause.

■ The prosecution offered as evidence three 911 calls made by Emma Bradford, a resident of the neighborhood where the crowd assembled. Cannon only challenges the admission of the first 911 call, made shortly after the accident but before the shooting. The jury heard the

following exchange between Bradford and the 911 operator during the first 911 call:

Operator: 911 dispatch—

Bradford: Uh, yes, we have a disturbance on Agnes. These little girls, they all down there . . .

Operator: What's the address?

Bradford: Uh, see what can I use, it's like right of 31st and Agnes—these little boys down here they got guns and stuff, this girl swung around and hit a car she was driving fast, they trying to start confusion, they all in the streets trying to fight, and they got guns.

Operator: Do you see someone with a gun right now?

Bradford: Yes I do.

Operator: Okay give me a description of the person, is it black, white, or—

Bradford: They in red and yellow . . .

Operator: A red and yellow what, ma'am?

Bradford: Wait a minute, I'm trying to see what—

Operator: Only the person with the gun.

Bradford: Well all of them, all of them little teenagers around the corner got guns.

Operator: Do you see somebody with a gun in their hand right now?

Bradford: Yes. Yes I have.

Operator: Okay. So please give me a description of the person with the gun.

Bradford: It's—one of the girls—(inaudible) green—(inaudible) leave them alone—

Operator: A green what?

Bradford: (inaudible) One of them's got on a green t-shirt and some jeans, one of them's got on a red skirt and some red tennis shoes and—uh huh (inaudible) the police fixin' to come.

Operator: Ma'am so all the people you're describing have guns in their hands?

Bradford: Yes they do little dudes in white t-shirts and black pants and stuff and blue t-shirts with number 20.

Operator: All right, what's your name?

Bradford: My name's Emma Bradford, I stay on the corner of 31st and Agnes.

Operator: And what's the phone number you're calling from?

Bradford: 924–3XXX.

Operator: All right, the police will be out.

Bradford: And the license plate number is XXX–XXX.

Operator: All right the police will be out.

Bradford: Thank you.

Bradford subsequently made a second 911 call to report the shooting and when that call was disconnected before the 911 operator could obtain the address of the shooting, the operator called Bradford back. Cannon does not challenge the admission of the second and third call. Emma Bradford was not called as a witness.

■ Cannon contends the admission of the tape of Bradford's 911 call violates his right to confront a witness against him under the Sixth Amendment. In *Crawford v. Washington*, the United States Supreme Court held that the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Only testimonial statement cause the declarant to be a witness. *Id.* at 51, 124 S.Ct. 1354. Cannon argues that because Bradford sought to provide information to the 911 operator, Bradford's statements

during the 911 call were testimonial. As set forth in *Crawford*, admission of the statements absent the witness testifying violated Cannon's right to confront the witnesses against him.

Whether statements made in a 911 call are considered testimonial for purposes of Sixth Amendment analysis has been addressed by the United States Supreme Court in *Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), and more recently by the Missouri Supreme Court in *State v. Kemp*, 212 S.W.3d 135 (Mo. banc. 2007). Davis required the court to "determine more precisely which police interrogations produce testimony." *Kemp*, at 148 (*quoting Davis v. Washington*, 126 S.Ct. at 2276). Accordingly, Davis sets forth the test whether statements made during a 911 call implicate the Sixth Amendment Confrontation Clause.

■■■ The *Davis* test, as elucidated in *Kemp*,[1] states that where the primary purpose of the 911 interrogation is to enable police assistance to meet an ongoing emergency, statements made for that purpose are not testimonial and do not implicate the Confrontation Clause. *Kemp*, at 148. Where, however, the purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution when there is no ongoing emergency, such statements are testimonial and admission of the statements may violate the Confrontation Clause. *Id.*

■■■ Cannon argues that because Bradford was attempting to provide information, her statements were de facto testimonial and, therefore, implicate *Crawford*.

However, under the Davis test, the issue is not whether the caller is providing information but, rather, "whether, objectively considered, the interrogation that took place in the course of the 911 call produced testimonial statements." *Davis*, 126 S.Ct. at 2276. Here, Bradford was describing a situation of potential violence-a car accident, a large group of young people gathered in the street, and the possible presence of weapons. She stated that "these little boys down here they got guns … they all out in the streets trying to fight, and they got guns." She was describing "events *as they were actually happening* " and in describing a large group of potentially armed young people, was warning the police of "an ongoing emergency." *Id.* (emphasis in original). She made a "call for help against a bona fide physical threat." *Id.*

Moreover, the 911 operator's questions about armed individuals were directed at identifying potential threats to police and public safety. The operator was clearly attempting to establish who might pose a physical threat to the police and others in the crowd. As in *Davis*, the operator was attempting "to establish the identity of the [potential] assailant, so that the dispatched officers might know whether they would be encountering a violent felon." *Id.* Such statements are adjudged nontestimonial under *Davis* and *Kemp*.

The tape of the 911 call clearly survives the test for testimonial statements. The trial court did not err in admitting the tape of the first 911 call into evidence. Cannon's first point is denied.

---

**1.** The Missouri Supreme Court noted that the admission of a 911 call must overcome two evidentiary hurdles. The statements must first survive traditional hearsay analysis. *Kemp*, 212 S.W.3d 135, 147 (Mo. banc, 2007). The statements must then survive a Sixth Amendment Confrontation Clause analysis. *Id.* Here, the defense does not challenge the admission of the statements as hearsay, conceding the statements could come in under as an excited utterance exception to the hearsay rule.

**B.** EVIDENCE OF WITNESS TAMPERING WAS ADMISSIBLE TO SHOW CONSCIOUSNESS OF GUILT.

Cannon next challenges the admission of the testimony of Rodney Smith as to threats made by Cannon. Cannon argues that the evidence of the threats against a witness constitutes evidence of the prior, uncharged crime of witness tampering and should have been excluded. Moreover, he argues that the evidence was neither logically or legally relevant to the crime for which he was charged. As such, he concludes, the trial court erred in allowing Smith to testify to the threats.

Smith, a passenger in Long's car and a witness against Cannon, was incarcerated in the same facility as Cannon prior to the trial. Over defense objections, Smith testified that Cannon threatened him as a "snitch" on three occasions. While Smith was on the phone, Cannon, coming down the stairs, shouted, "You don't go back to the hood," and "you heard me." On a subsequent occasion, Smith and Cannon were playing cards when Cannon said, "Man, you sound like a snitch, tell your lawyer to call John ... and I will let him know what happened." Finally, Smith testified that on another occasion, Cannon directed a slicing motion made across his throat at Smith.

Generally, evidence of prior uncharged crimes, wrongs, or acts is inadmissible. *State v. Burns,* 978 S.W.2d 759, 761 (Mo. banc 1998). Evidence of the defendant's prior misconduct is not admissible to show propensity; however, such evidence "is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *Id.* (*citing State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993)).

Here, Cannon contends the evidence of alleged witness tampering is neither legally nor logically relevant. However, in claiming he shot Long in defense of another, the burden shifted to the State to show that this was not a case of defense of others. "Conduct and declarations of a defendant that are relevant to show a consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime." *State v. Barton,* 998 S.W.2d 19, 28 (Mo. banc 1999). As such, evidence that Cannon threatened a witness to the events leading to the shooting is admissible to show consciousness of guilt, which evidence is even more relevant in light of his defense that he shot Long in defense of another. *State v. White,* 870 S.W.2d 869, 875 (Mo.App.1993). As noted in *State v. White,* threatening a witness is "inconsistent with the demeanor of an innocent person who in self-defense accidentally shot someone." [2] *Id.*

Evidence of Cannon's statements and conduct toward Smith were both logically and legally relevant to the crime for which he was charged and were admissible as evidence to assist the State in meeting its burden to show Cannon did not shoot Long in defense of Michelle Miller. Cannon's claim that the trial court abused its discretion in admitting evidence of the threats is without merit and is hereby denied.

2. Smith's testimony was not the sole evidence before the court of Cannon's threats against Smith. Cannon himself admitted he had written a letter to a friend, incarcerated with Smith at the Osage Correctional Center, in which Cannon wrote, "The snitch named Rodney Smith, a/k/a Roddy Rod, came back from the pen and lied on me. He might be down there where you at, so you know, put the word out for me."

## III. Conclusion

The trial court did not abuse its discretion in admitting Emma Bradford's first 911 call as the statements made during the call were not testimonial. Nor did the trial court err in admitting Smith's evidence of Cannon's threats against him as such evidence was logically and legally relevant to show consciousness of guilt in view of Cannon's claimed defense. The judgment of the trial court is affirmed.

All Concur.