**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Katrina SMITH, Defendant/Appellant.**

**No. ED 90253.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 30, 2008.

Maleaner Harvey, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Defendant Katrina Smith appeals her conviction for voluntary manslaughter and armed criminal action on the grounds that the trial court erred when it: (1) excluded Officer Darren Wilson's testimony regarding Defendant's statement that she stabbed the victim only after he threatened her with a gun; and (2) when it allowed the State's rebuttal witness, Ruby Wesley, to testify about previous occasions where the victim stated during telephone conversations that Defendant was coming after him with a knife. We affirm.

### Background

Defendant was charged with first-degree murder and armed criminal action for fatally stabbing her boyfriend, Terry Moore. At trial, the State called Raymond Jones, a long time friend of Mr. Moore and eyewitness to the stabbing. Mr. Jones testified that he, Defendant, and Mr. Moore were at Defendant and Mr. Moore's apartment watching a movie and drinking alcohol on the night of the stabbing. At some point, Defendant and Mr. Moore were in the bedroom arguing about each other's drinking. From the living room, Mr. Jones heard the couple make statements such as "I'll call the police" and "get out of my face," but heard no violent threats, no sounds of slapping or hitting, and no mention of a gun. Mr. Jones testified that after Mr. Moore returned to the living room, he heard Defendant in the kitchen "rooting through the silverware drawer." According to Mr. Jones, Defendant then entered the living room with a knife and stabbed Mr. Moore in the chest. Mr. Jones testified that, during the entire night, he never saw Mr. Moore possess a gun.

Officer Darren Wilson testified that he responded to Mr. Jones' 9–1–1 call. He met Mr. Jones at the front door of the apartment and found Mr. Moore, in the living room, face down in a pool of blood. On cross-examination, Officer Wilson testified that, while at the apartment, he saw Defendant "acting upset, crying, yelling, 'Oh my God,' and real, real emotional." Defense counsel attempted to elicit testimony that, while questioning Defendant at the apartment, she told Officer Wilson that Mr. Moore "came after her with a gun" before she stabbed him. However, the trial court sustained the State's objection and excluded the testimony.

In her defense, Defendant testified that on occasions prior to the stabbing, Mr.

Moore was abusive towards her, threatened her with a gun, and abused her physically. Defendant claimed that on the night of the stabbing, Mr. Moore retrieved a gun that he kept in the bedroom closet. During the argument, Mr. Moore allegedly waved the gun at Defendant and said "you don't quit lying, I will kill you tonight." Defendant stated that she was scared and had never seen Mr. Moore "in that kind of rage." She made her way to the kitchen, grabbed a knife, and told Mr. Moore to put the gun down. When Mr. Moore did not comply, Defendant claimed that she meant to stab him in the arm but accidentally stabbed him in the chest. On cross-examination, Defendant testified that she never intended to stab Mr. Moore at all.

The defense also presented to the jury an excerpt from Officer Wilson's police report in lieu of his live testimony. The report stated that, at the apartment, Defendant told Officer Wilson that she had accidentally stabbed Mr. Moore as he rushed her with a gun.

On rebuttal, the State called Mr. Moore's cousin, Ruby Wesley. Over defense counsel's objections, the trial court permitted Ms. Wesley to testify that during previous telephone conversations with Mr. Moore, she could hear Defendant "screaming and hollering" in the background, and Mr. Moore would say "Here she comes with a knife." Ms. Wesley stated that when she advised Mr. Moore that he and Defendant needed to separate before someone got hurt, he laughed and said that the only person Defendant would hurt with the knife was herself.

At the close of the evidence, the jury found Defendant guilty of voluntary manslaughter and armed criminal action. She was later sentenced to concurrent terms of fifteen years' and ten years' imprisonment, respectively. Defendant appeals.

## Discussion

### A. Defendant's Hearsay Statement

■ In Defendant's first point, she claims that the trial court erred in excluding testimony from Officer Wilson that Defendant told him Mr. Moore came after her with a gun before she stabbed him. Specifically, Defendant asserts that her hearsay statement to Officer Wilson fell within the excited utterance exception to the hearsay rule.

Because Defendant did not raise her objection to the trial court's ruling in her motion for a new trial, our review of this point is for plain error. To reverse for plain error, the error must affect a substantial right resulting in manifest injustice or miscarriage of justice. *State v. Wolf*, 91 S.W.3d 636, 642 (Mo.App. W.D. 2002).

■ Under the hearsay rule, out-of-court statements offered to prove the truth of the matter asserted are generally inadmissible. *State v. Lucio*, 247 S.W.3d 131, 134 (Mo.App. S.D.2008). The excited utterance exception to the hearsay rule applies to statements made following "a startling or unusual occurrence sufficient to overcome normal reflection such that the ensuing declaration is a spontaneous reaction to the startling event." *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007) (quotation omitted). The essential test for admissibility of an excited utterance is whether it was made under such circumstances as to indicate it is trustworthy. *Id.* "This exception is premised on the idea that where a statement is made under the immediate and controlled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant." *Id.* (quotation omitted). Factors considered in determining whether an excited utterance exists are: "[1] the

time between the startling event and the declaration, [2] whether the declaration is in response to a question, [3] whether the declaration is self-serving, and [4] the declarant's physical and mental condition at the time of the declaration." *Id.* (quotation omitted).

In this case, it was not plain error for the trial court to exclude Officer Wilson's testimony. First, the statement was not made until after Mr. Jones called 9–1–1 and the police arrived at the apartment, some time after Defendant had stabbed Mr. Moore. Second, Defendant's statement was in response to a question, which inherently required reflection by Defendant. Third, Defendant's statement was self-serving as it suggested that Mr. Moore was the initial aggressor when he threatened her with a gun. Last, Officer Wilson testified that although Defendant was "upset and hysterical" when he arrived to the apartment, she calmed down within a few minutes. Under the circumstances present here, it was not error to conclude that Defendant's statement lacked the indicia of trustworthiness necessary to meet the standard of an excited utterance.[1] Point denied.

### B. Ruby Wesley's Rebuttal Testimony

■ In her second point, Defendant claims that the trial court abused its discretion when it allowed Ruby Wesley to testify as a rebuttal witness for the State about her phone conversations with Mr. Moore. In particular, Defendant asserts that Ms. Wesley's testimony as to Mr. Moore's statements about Defendant coming after him with a knife was improper rebuttal evidence and inadmissible hearsay. Additionally, Defendant contends

that she was prejudiced because, without Ms. Wesley's testimony, a reasonable jury would have found that she acted in self-defense and acquitted her.

Our review of the admission of Ms. Wesley's testimony is for abuse of discretion. A trial court has broad discretion in determining the admissibility and scope of rebuttal evidence. *State v. Hurley*, 208 S.W.3d 291, 293 (Mo.App. S.D.2006). "This Court will not hamper the exercise of that discretion unless it is clear that the trial court's ruling is against the logic of the circumstances and is 'so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.* (quotation omitted).

■ Defendant argues that Ms. Wesley was an improper rebuttal witness because her testimony failed to rebut any specific evidence presented by the defense. However, where a defendant raises the victim's reputation as a violent person before the jury, the defendant also raises his or her own reputation for violence. *Vicory v. State*, 81 S.W.3d 725, 728–29 (Mo.App. S.D. 2002) (citation omitted). Defendant testified about Mr. Moore's previous threats and abusive behavior towards her in order to substantiate her claim of self-defense. By raising the issue of Mr. Moore's character for violence, it was within the trial court's discretion to admit evidence of Defendant's prior violent acts towards Mr. Moore.

■ Defendant also contends that Ms. Wesley's testimony about Mr. Moore's statements to her over the telephone was inadmissible hearsay. Specifically, she

---

1. Even if the trial court plainly erred by excluding Officer Wilson's testimony about Defendant's hearsay statements, Defendant was not thereby prejudiced because the same facts were established when Officer Wilson's police report disclosing Defendant's statement was later admitted without objection. *See State v. Smith*, 185 S.W.3d 747, 757 (Mo.App. S.D. 2006).

claims that the trial court abused its discretion when it admitted the hearsay statements as excited utterances. As discussed above, for a statement to fall within the excited utterance exception to the hearsay rule, it must be made under the immediate and controlled domination of the senses as a result of shock or excitement. *Kemp*, 212 S.W.3d at 146. Here, Ms. Wesley did not suggest that Mr. Moore was excited when telling her about Defendant coming at him with a knife. Rather, she testified that he was laughing about it. Without a showing that Mr. Moore's statements were made in excitement or shock at Defendant's threat, Ms. Wesley's testimony lacked a proper foundation for admission as an excited utterance.

■ In response, the State argues that Ms. Wesley's statements were admissible as present sense impressions if not excited utterances. For a declarant's out-of-court statement to be admitted as a present sense impression: (1) the statement must be uttered simultaneously, or almost simultaneously, with the occurrence of an event or act (2) the statement must describe or explain the event or act, and (3) the declarant must have perceived the event or act with his or her own senses. *See* Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 8.35, at 803–05 (3rd ed.2003). *See, e.g., Lindsay v. Mazzio's Corp.*, 136 S.W.3d 915, 923 (Mo.App. S.D.2004); *State v. Crump*, 986 S.W.2d 180, 188–89 (Mo.App. E.D.1999). Although statements of present sense impression, unlike excited utterances, do not result from the shock or excitement produced by a startling or unusual occurrence, other indicia of trustworthiness support their admissibility as evidence. *See* 2 McCormick on Evidence § 271, at 251 (6th ed.2006). First, since the statement describes events as, or immediately after, the declarant observes them, issues affecting credibility, such as errors in memory and time for calculated misstatement, are not present. *Id.* Additionally, in most cases, a witness will have observed the event and can corroborate the hearsay statement, and the declarant will often be available at trial for cross-examination to verify his or her credibility. *Id.*; *see also Crump*, 986 S.W.2d at 188–89 (finding no error in admitting a statement of present sense impression when the statement was corroborated by a witness and the declarant was available for cross-examination).

In this case, while Mr. Moore's statements were made contemporaneously with the events they described, Mr. Moore was unavailable for cross-examination and the State offered no testimonial or physical evidence to corroborate the hearsay statements. Under these circumstances, Mr. Moore's hearsay statements lacked sufficient indicia of reliability to be admissible as a present sense impression and the trial court abused its discretion by admitting them over defense counsel's objections.

■ We now turn to Defendant's claim of prejudice. An abuse of discretion in admitting improper evidence warrants a new trial only when the admission prejudiced the defendant. *State v. Henderson*, 105 S.W.3d 491, 497 (Mo.App. W.D.2003). "The test for prejudice is whether the improper admission was outcome-determinative." *State v. Chism*, 252 S.W.3d 178, 185 (Mo.App. W.D.2008) (quotation and alterations omitted). "A finding of outcome-determinative prejudice 'expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.'" *State v. Barriner*, 34 S.W.3d

139, 150 (Mo. banc 2000) (quotation omitted).

Defendant contends that she was prejudiced by Ms. Wesley's testimony because had the trial court excluded the improper testimony, a reasonable jury would have acquitted her on the grounds of self-defense. Specifically, Defendant asserts that the jury relied on Ms. Wesley's testimony to conclude that she regularly pulled a knife on Mr. Moore when they argued and therefore Defendant did not act in self-defense when she stabbed and killed Mr. Moore.

■ The use of deadly force in self-defense requires the real or apparently real necessity for the defender to kill or use deadly force to protect himself or herself from an immediate threat of serious bodily injury or death. *Dorsey v. State,* 113 S.W.3d 311, 317 (Mo.App. S.D.2003). Defendant's theory was that Mr. Moore threatened her life with a gun and that she stabbed him in self-defense. In support of her theory, Defendant offered her own testimony as well as Officer Wilson's report disclosing her statement made at the apartment that Mr. Moore came after her with a gun. The State's version of the night in question was elicited from Mr. Jones who testified that Mr. Moore neither possessed a gun nor made any threats towards Defendant before she stabbed him. In closing argument, both the State and the defense focused on whether Mr. Moore possessed a gun and threatened Defendant with it before she stabbed him. Significantly, the State only referenced Ms. Wesley's testimony briefly in closing and did not argue that it contradicted Defendant's self-defense theory. *See, Gage v. Morse,* 933 S.W.2d 410, 421–22 (Mo.App. S.D.1996).

It is clear from the record that the admission of Ms. Wesley's testimony did not undercut Defendant's theory that Mr. Moore threatened her with a gun causing her to kill him in self-defense. To the contrary, the testimony only tended to prove a fact that Defendant never disputed: she had a knife and she stabbed Mr. Moore with the knife. The defense ultimately turned on whether Mr. Moore possessed a gun, rather than whether Defendant possessed a knife. An eyewitness, Mr. Jones, testified that Mr. Moore did not have a gun when Defendant stabbed him. Given the evidence at trial, in particular, Defendant's admission that she used a knife to stab Mr. Moore, Ms. Wesley's testimony did not prejudice Defendant's theory of self-defense. Point denied.

### Conclusion

Judgment of the trial court is affirmed.

KURT S. ODENWALD, Presiding Judge and GLENN A. NORTON, Judge, Concurs.