**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Brandon McKINNEY,
Defendant/Appellant.**

No. ED 94500.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 22, 2011.

Shaun J. Mackelprang, Daniel K. Jacob, Jefferson City, MO, For Plaintiff/Respondent.

Brocca Leah Smith, St. Louis, MO, For Defendant/Appellant.

Before SHERRI B. SULLIVAN, P.J., CLIFFORD H. AHRENS, J., and LAWRENCE E. MOONEY, J.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Brandon McKinney (Appellant) appeals from the trial court's judgment and sentence entered upon a jury verdict finding him guilty of second-degree domestic assault. We affirm.

*Factual and Procedural Background*

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial is as follows. Victim and Appellant, a two-time felon, dated from March until sometime in June of 2009. Victim became pregnant during that time. On the morning of June 29, 2009, post-break-up, Appellant waited for Victim at the MetroLink station where he knew she boarded the train for school. Victim arrived and Appellant rode the train with her, attempting to persuade her to get back together. They arrived at Victim's stop and she went on to school while Appellant caught a bus.

Later that day, after coming home from school, Victim found Appellant waiting at her door. Appellant again wanted to talk about getting back together. Victim testified that she was afraid that Appellant would take her keys if she tried to enter her home, so she walked to a store called Salama's at 14th Street and Cass Avenue. Appellant followed Victim to the store, continuing to talk about getting back together. After leaving Salama's, Appellant asked Victim to wait with him for his bus. Victim agreed and went with Appellant to a bus stop across the street from Salama's.

As they waited at the bus stop, Appellant persisted with the talk of reuniting and Victim continued to refuse. Appellant was becoming increasingly upset and finally started choking Victim until she could not breathe and passed out. When Victim regained consciousness, she got up and Appellant again asked her if they could get back together. When Victim refused, Appellant punched her in the face, knocking her unconscious again. When Victim regained consciousness for the second time, Appellant stomped on her head.

While Appellant was assaulting Victim, a man drove by, witnessed the assault, and called 911. The 911 call was recorded and played for the jury at trial, over Appellant's objection to the recording as hearsay and its admission being a violation of his right to confrontation. The call went as follows:

Dispatcher: St. Louis City Police.

Caller: Hey, I'm calling . . .

Dispatcher: Hello.

Caller: Hello.

Dispatcher: Yes sir.

Caller: Yeah, we're going to need an officer down here on 14th and Cass. A girl is getting beat.

Dispatcher: What's the address? What are they in front of?

Caller: It's like right across the street from a Salama's Supermarket.

Dispatcher: Ok. And what is that guy wearing?

Caller: A white tee shirt and the girl is in an all-green uh like the nurse's uniform.

Dispatcher: Ok.

Caller: And he's just kickin' the crap out of her on the ground.

Dispatcher: OK. We'll get somebody there. Did you want to leave the name and number?

Caller: Yes, my name is Woody.

Dispatcher: Ok.

\*       \*       \*

Dispatcher: Ok. How old does he appear to be?

Caller: He was like he was about 26 or 27.

Dispatcher: Ok. Does he [sic] any type of weapon?

Caller: Do we have any type of weapon?

Dispatcher: Yeah.

Caller: Not that I've seen.

Dispatcher: Ok. Is he—what color pants does he have on?

Caller: It's a dark color like a denim blue, black, something like that.

Dispatcher: Ok. We'll get somebody there.

Caller: Yeah.

Dispatcher: Thank you.

Caller: Bye bye.

Police were dispatched to the scene and upon arrival, noted that Victim was holding her head and was very upset. After speaking with Victim, the police arrested Appellant for assault.

At trial, Victim testified as to the above events. The 911 tape was played for the court, as set forth above, but the declarant did not testify. Appellant testified in his own defense and stated that Victim was the one who was angry and that he had only held her back from attempting to hit him for not staying with her.

The jury found Appellant guilty of second-degree domestic assault. The trial court, having previously found Appellant to be a prior and persistent offender, sentenced him to eleven years in the Missouri Department of Corrections. This appeal follows.

### Point on Appeal

In his point on appeal, Appellant maintains the trial court erred and abused its discretion in overruling his motion to exclude and in admitting the 911 tape, because the contents of the tape were hearsay and the admission of the tape was in violation of his right to confront the declarant, as set forth in *Crawford v. Washing-* *ton,* 541 U.S. 36, 38, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

### Standard of Review

■■■ "A trial court has broad discretion to admit or exclude evidence at trial." *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). "This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion." *Id.* "[T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* "Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 223–24. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 224.

### Discussion

■■■ At trial, the parties stipulated that the 911 tape met the foundational requirements for admission as a business record. However, Appellant still objected to the contents of the tape as hearsay that did not fall within an exception and violated his right to confront the declarant.

■■■ For a 911 tape to be admissible, it must clear two hurdles. *State v. Bynum,* 299 S.W.3d 52, 59 (Mo.App. E.D.2009). "First, the statements must survive traditional hearsay analysis." *Id.* "Second, because this is a criminal case, the statements must survive Sixth Amendment Confrontation Clause analysis." *Id.*

Here, the statements made on the 911 tape were admitted under the present sense impression exception to the hearsay rule. Present sense impression state-

ments have certain indicia of trustworthiness to support their admissibility. *State v. Taylor*, 298 S.W.3d 482, 493 (Mo.banc 2009). Although statements of present sense impression, unlike excited utterances, do not result from the shock or excitement produced by a startling or unusual occurrence, other indicia of trustworthiness support their admissibility as evidence. *State v. Smith*, 265 S.W.3d 874, 879 (Mo.App. E.D.2008). Errors in memory and time for calculated misstatements are not present because the statements are made as the declarant perceives the event or immediately thereafter. *Taylor*, 298 S.W.3d at 493. This exception to the general prohibition against hearsay applies when such circumstances assure the trustworthiness of the declarant's statement. *Id.* at 492.

■ For a declarant's out-of-court statement to be admitted under the present sense impression exception: (1) the statement must be uttered simultaneously, or almost simultaneously, with the occurrence of an event or act, (2) the statement must describe or explain the event or act, and (3) the declarant must have perceived the event or act with his or her own senses. *Taylor*, 298 S.W.3d at 492; *Smith*, 265 S.W.3d at 879. Here, the declarant's statements in the 911 tape met these three requirements in that they described an event the declarant was seeing in the present time, i.e., he told the dispatcher that he was seeing a female in green scrubs being badly beaten by a man, who appeared to declarant to be about 26 or 27 years old, in a white t-shirt and dark or denim pants at 14th Street and Cass Avenue in front of Salama's grocery store.

We note that in *Smith*, the declarant was unavailable to testify and we found

that the 911 tape failed the present sense impression exception to the hearsay rule because the statements on the tape lacked sufficient indicia of trustworthiness *because there was no corroborating evidence. Smith*, 265 S.W.3d at 879 (emphasis added).[1] In the instant case, there was corroborating evidence, in the form of responding Officer Teirra James' testimony, who witnessed Victim's condition and Appellant's behavior at the scene, and Victim's testimony.

■ The second argument Appellant makes is that admission of the 911 tape under the present sense impression exception to hearsay still violates his right to confront the declarant. We disagree.

Where the primary purpose of the 911 interrogation is to establish or prove past events potentially relevant to later criminal prosecution when there is no ongoing emergency, such statements are testimonial and admission of the statements may violate the Confrontation Clause. *State v. Cannon*, 215 S.W.3d 295, 300 (Mo.App. W.D.2007), *State v. Kemp*, 212 S.W.3d 135, 148 (Mo.banc 2007). However, where the primary purpose of the 911 interrogation is to enable police assistance to meet an ongoing emergency, statements made for that purpose are not testimonial and do not implicate the Confrontation Clause. *Cannon*, 215 S.W.3d at 300; *Kemp*, 212 S.W.3d at 148.

In the instant case, the 911 caller was clearly "describing events as they were actually happening" and "was warning the police of an ongoing emergency." *Cannon*, 215 S.W.3d at 300, quoting *Davis v. Washington*, 547 U.S. 813, 827–28, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). As such, the statements in the 911 tape were

---

1. Also, in *Smith* we determined no prejudice resulted from the admission of the tape and affirmed the trial court's judgment.

not testimonial and do not implicate the Confrontation Clause. Accordingly, Appellant's point on appeal is denied.

## Conclusion

The judgment and sentence of the trial court are affirmed.

CLIFFORD H. AHRENS, and LAWRENCE E. MOONEY, JJ., concur.