

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED106656 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1722-CR02097-01 |
| | ) | |
| SEQUOI D. EDWARDS, | ) | Honorable Michael W. Noble |
| | ) | |
| Appellant. | ) | Filed: May 7, 2019 |

## Introduction

Defendant, Sequoi D. Edwards (Defendant), appeals the judgment after a jury found him guilty of third-degree kidnapping, third-degree domestic assault, unlawful use of a weapon, and two counts of fourth-degree domestic assault. Defendant argues the trial court erred: (1) in admitting into evidence three 911 calls, (2) excluding the testimony of a process server, and (3) instructing the jury on the charge of third-degree domestic assault. The trial court's judgment is affirmed.

## Background

We view the evidence in the light most favorable to the verdict.[1] The victim began a romantic relationship with Defendant in 2015. Thereafter, Defendant bought a house and

---

[1] State v. West, 551 S.W.3d 506, 510 (Mo. App. E.D. 2018).

the victim moved in. In the early morning of May 11, 2017, Defendant and the victim started arguing at the house. Defendant hit the victim with his fists and a metal mop. Despite Defendant's attempt to block the door, the victim eventually escaped from the house. The victim saw a neighbor, Chris Thomas, standing outside and ran to him. Thomas gave the victim his phone and she called 911. The victim told the 911 operator: her boyfriend, Defendant, was trying to kill her, Defendant was wearing a blue shirt and jeans, Defendant had a gun, Defendant was inside the house, and she was hurt and needed an ambulance.

Defendant came outside with a gun in his hand. Defendant grabbed the victim by her hair, dragged her down the street, and hit her head with the gun. An unidentified female called 911 once, and a male, believed to be Thomas, called 911 three times. The male caller and the victim told 911 operators that Defendant was wearing a blue shirt and jeans. When the police arrived at approximately 7:30 a.m., they saw Defendant dragging the victim across the street. The officers also observed a handgun protruding from Defendant's waistband and Defendant was wearing blue jeans and a blue shirt. The officers arrested Defendant. The victim went by ambulance to the hospital for treatment of her injuries. The victim suffered a nasal fracture, subconjunctival hemorrhage to her eye, and contusions to her face and other parts of her body.

The jury found Defendant guilty of third-degree kidnapping, third-degree domestic assault, unlawful use of a weapon, and two counts of fourth-degree domestic assault. The trial court sentenced Defendant to a total of 11 years imprisonment for the five convictions. Defendant raises three points on appeal.

2

Point I

In his first point, Defendant argues the trial court abused its discretion by admitting into evidence and playing for the jury three 911 calls: one made by an unknown female and two made by a male.[2] Defendant asserts the calls were inadmissible hearsay. Defendant also contends that his constitutional rights under the Confrontation Clause were violated because the male and female callers did not testify at trial and, therefore were not subject to cross-examination.

The trial court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion. State v. Blurton, 484 S.W.3d 758, 769 (Mo. banc 2016). "Claims of trial court error are reviewed for prejudice, not mere error." Id. (citation and internal quotations omitted). We "will reverse the trial court's decision only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." Id.

There were five calls placed to 911, one by the victim, one by an unknown female, and three from a male. Defendant filed a pretrial motion in limine to exclude four of the calls but did not challenge admission of the victim's call. Defendant argued that the four calls were inadmissible hearsay and violated his confrontation rights. The trial court ruled that three of the four challenged calls were admissible: the male's calls at 7:25 a.m. and 7:29 a.m., and the female's call at 7:31 a.m.

The victim's 7:20 a.m. call to 911 was played for the jury without objection. Defendant objected to the 911 calls made by the male at 7:25 a.m. and 7:29 a.m., and the female's call at 7:31 a.m.

---

[2] At trial, Defendant's counsel "guess[ed]" Thomas was the male who made the three calls but the caller did not "identify himself on the phone call."

3

During his 7:25 a.m. call, the male caller told the 911 operator that there was a "chick on my front [inaudible], "she just used my phone to call the cops," and he wanted to know where the police were. In addition, a male voice can be heard yelling in the background. The 911 operator responded "we're driving to you now." The male caller called again at 7:29 a.m., and spoke to the 911 operator as follows:

911 Operator: Police Department. [inaudible].

Caller: Yeah. I just called y'all 10 minutes ago, 20 minutes ago. There is a guy across the street dragging a girl over here telling me he's going to kill her.

911 Operator: What's the address?

Caller: [states address].

911 Operator: [repeats address] He has a gun out right now?

Caller: . . . He's dragging her up and down the street by her hair, hitting her with a pistol.

911 Operator: Okay, what's he wearing?

Caller: He's got a blue shirt on, some jeans. And his hair's all like a fro.

911 Operator: Blue shirt and jeans and he's dragging her right now.

. . .

Caller: Yeah. He's out here punching her in her face right now.

911 Operator: Alright, alright, we're on our way.

Caller: Alright

At 7:31 a.m., an unknown female called 911 and stated "Yes. Hi. I need to report that there is a woman being beaten in the middle of the street. There are the police. Okay, never mind. He got her. That's okay."

4

For a 911 recording to be properly admitted, two "hurdles must be cleared." State v. Kemp, 212 S.W.3d 135, 145 (Mo. banc 2007). "First, the statements must survive traditional hearsay analysis. Second, because this is a criminal case, the statements must survive Sixth Amendment Confrontation Clause analysis." Id.

## Hearsay Analysis

At trial, the prosecutor argued that the statements were admissible under the excited utterance or present sense impression exceptions to the hearsay rule.[3] "Present sense impression statements have certain indicia of trustworthiness to support their admissibility." State v. McKinney, 336 S.W.3d 499, 502-03 (Mo. App. E.D. 2011). "Errors in memory and time for calculated misstatements are not present because the statements are made as the declarant perceives the event or immediately thereafter." Id. at 503. For the declarant's out-of-court statement to be admitted under the present sense impression exception: (1) the statement must be made simultaneously, or almost simultaneously, with the occurrence of an event or an act, (2) the statement must describe or explain the act, and (3) the declarant must have perceived the event or act with his or her own senses. Id.

During the first call by the male caller at 7:25 a.m., he stated that there was a "chick on my front [inaudible]," the woman "just used my phone to call the cops," and questioned where the police were. These statements satisfy the elements for a present sense impression exception to hearsay: simultaneous or almost simultaneous with the occurrence of the event, described the acts, and were perceived by the male caller.

---

[3] We shall consider the present sense impression exception for the three calls and do not determine whether the excited utterance exception applies.

5

The male caller's 7:29 a.m. call was also admissible under the present sense impression exception. The male caller's statements were being made simultaneously with the occurrence of the act. The male caller also described the acts. The male caller told the 911 operator that a "guy" was dragging a girl down the street by her hair, hitting her with a pistol, and punching her in the face "right now." The caller also told the operator the address, the police had not arrived, and described the perpetrator's clothing. Further, the caller's statements reflect that he was perceiving the acts with his own senses. The caller stated the victim was being punched "right now."

The female caller's 7:31 a.m. call was again admissible under the present sense impression exception. The caller's statements were being made simultaneously and described the act. The caller told the 911 operator "there is a woman being beaten in the middle of the street" and the police arrived. The caller's statement "there are the police" shows that the caller was perceiving the event with her own senses.

The three 911 calls also had additional indicia of trustworthiness because there was corroborating evidence. McKinney, 336 S.W.3d at 503. Officer Brian Kotaska testified that when he arrived at the location provided by the 911 callers he saw Defendant dragging the victim down the street by her hair, Defendant was wearing a blue shirt and blue jeans, Defendant had a handgun protruding from his waistband, and the victim had blood around her mouth and swelling was "setting in." Officer Kotaska's partner, Officer Kelly Smith, gave similar testimony as Officer Kotaska. Further, the victim testified regarding the events. Id. The trial court did not abuse its discretion by overruling Defendant's hearsay objection to the three calls. Id.

6

## Confrontation Clause

Defendant also contends the three calls violated his constitutional confrontation rights. We typically review a trial court's evidentiary rulings for an abuse of discretion but determining whether a criminal defendant's rights were violated under the Confrontation Clause is a question of law that this Court reviews de novo. State v. Ivy, 531 S.W.3d 108, 120 (Mo. App. E.D. 2017).

The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Kemp, 212 S.W.3d at 147 (citing Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). "The testimonial nature of a statement is what makes the declarant a 'witness' that the accused has a right to confront." Id. at 147-48.

The issue is whether the 911 statements are considered testimonial or non-testimonial. Id. at 149; State v. Burns, 478 S.W.3d 520, 526 (Mo. App. E.D. 2015). If the statements are considered non-testimonial then the Confrontation Clause does not prohibit their admission. Id. "Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). But statements are testimonial "when the circumstances objectively indicate that there is no such ongoing

emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id.

In the present case, the 911 operators asked questions regarding the caller's location, if Defendant had a "gun out," and the clothes Defendant was wearing. Questions about the address would assist police to locate Defendant. The question about Defendant having a "gun out" would inform police if they should expect Defendant would be armed. The inquiry about Defendant's clothing would help police identify Defendant. Review here reflects that the primary purpose of the "interrogation" was to enable the police to assist in an ongoing emergency. Evaluation of all the caller's challenged statements indicate they were non-testimonial and, therefore not prohibited by the Confrontation Clause.

The trial court did not err in admitting the three calls. Defendant's first point is denied.

## Point II

In his second point, Defendant argues the trial court abused its discretion by excluding the testimony of a process server, John Hefele. Defendant contends Hefele would have testified about his inability to find Thomas. Defendant asserts that Hefele's inability to serve Thomas demonstrates Thomas did not want to be forced to testify and, therefore his statements during the two 911 calls should not be believed.

Defendant filed a pretrial motion in limine to exclude the testimony of Thomas, whom the State endorsed as a witness. Defendant asserted that Hefele could not locate Thomas to serve him with a deposition subpoena. The prosecutor stated they also had been

8

unable to locate Thomas and she did not intend to call him as a witness. The court granted Defendant's motion to exclude Thomas's testimony.

During Hefele's attempt to serve Thomas, Hefele used the address written on the State's endorsement of Thomas. This address is on the same street and apparently a few houses from where Defendant and the victim lived. At trial, Defendant sought to call Hefele as a witness. The trial court denied the request. Defendant called Hefele to the stand and made a formal offer of proof. Hefele stated that he was hired to serve a subpoena on Thomas. Hefele also stated that in December of 2017 he made three unsuccessful attempts to serve the subpoena. According to Hefele, a mail carrier told him that she did not believe anyone lived at the address being used by Hefele to locate Thomas. Hefele tried to locate Thomas at another location but without success. Hefele further asserted that the inability to serve subpoenas "happens with some degree of frequency." The court ruled that Hefele's proposed testimony had no evidentiary value and denied Defendant's request for Hefele to testify.

"To be admissible, evidence must be both logically and legally relevant." State v. Taylor, 466 S.W.3d 521, 528 (Mo. banc 2015). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Id. (citation and internal quotations omitted). "This is a very low level test that is easily met." State v. Thigpen, 548 S.W.3d 302, 315 (Mo. App. E.D. 2017) (citations and internal quotation marks omitted). "Evidence is legally relevant when the probative value of the evidence outweighs 'unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." Taylor, 466 S.W.3d at 528.

9

Hefele's testimony was not logically relevant. Hefele's inability to serve Thomas does not make Thomas's credibility regarding the two 911 calls more or less probable. As found by the trial court, there "is a myriad of possible reasons why a person is not served" and "there is absolutely no probative value from having a service processor testify." Hefele stated that the inability to serve subpoenas "happens with some degree of frequency." Defendant's argument regarding probative value is speculative and relies on inferences that fails to satisfy even a "very low level" test for evidence to be logically relevant. Accordingly, the trial court did not abuse its discretion by not permitting Hefele to testify. Defendant's second point is denied.

## Point III

In his third point, Defendant argues the trial court erred by instructing the jury on Count V, the charge of third-degree domestic assault, a class E felony. Defendant asserts "the conduct charged should have, under the rule of lenity, been chargeable and punishable only as domestic assault in the fourth degree, (a class A misdemeanor)." Defendant further asserts that the Missouri Legislature in enacting Section 565.074.1 and 565.076.1 "failed to 'ensure fair warning' about the 'scope of criminal liability' that due process requires."[4]

In Count V, the State charged Defendant with third-degree domestic assault, a class E felony, for "attempt[ing] to cause physical injury to [the victim] by striking her with a gun." The trial court submitted a verdict-directing Instruction, No. 13, to the jury which states in part:

> As to Count V, if you find and believe from the evidence beyond a reasonable doubt:

---

[4] All statutory references are to RSMo. (2016) unless otherwise indicated.

First, that on or about May 11, 2017, in the State of Missouri, the [D]efendant attempted to cause physical injury to [victim] by striking her with a gun, and,

Second, that [victim] and [D]efendant were persons who had been in a continuing social relationship of a romantic or intimate nature,

Third, that [D]efendant was aware that they were in a continuing social relationship of a romantic or intimate nature,

then you will find the [D]efendant guilty of domestic assault in the third degree...

MAI-CR 419.76 (2017).

Section 565.074.1 provides that [a] person commits the offense of domestic assault in the third degree if he or she attempts to cause physical injury or knowingly causes physical pain or illness to a domestic victim ..." Section 565.076.1 states that "[a] person commits the offense of domestic assault in the fourth degree if the act involves a domestic victim, ... : (1) [t]he person attempts to cause or recklessly causes physical injury, physical pain, or illness to such domestic victim ..." Third-degree domestic assault is a class E felony, whereas fourth-degree domestic assault is a class A misdemeanor.[5] Sections 565.074.2; 565.076.2.

Defendant states that the two statutes proscribe the same conduct: attempting to cause physical injury to the victim. Defendant asserts that when two criminal statutes proscribe the same conduct this creates an ambiguity. According to Defendant, the rule of lenity, therefore mandates that the ambiguity be resolved in a defendant's favor and he should have been charged with fourth-degree domestic assault on Count V.

---

[5] If a person has previously been found guilty of the offense of assault of a domestic victim two or more times, then domestic assault in the fourth degree is a class E felony. Section 565.076.2.

11

The rule of lenity gives a criminal defendant the benefit of a lesser penalty when there is an ambiguity in a statute permitting more than one interpretation. State v. Ondo, 232 S.W.3d 622, 628 (Mo. App. S.D. 2007). But "[t]he fact that another statute proscribes the same conduct does not create an ambiguity." Id. at 629. "It is axiomatic that a single offense may constitute an offense under two different statutes." Id. (citation and internal quotation marks omitted). When this occurs, the prosecutor has discretion to decide under which statute to charge the defendant. Id.; see State v. Haynes, 564 S.W.3d 780, 786 (Mo. App. E.D. 2018).

Defendant concedes that the Southern District rejected a similar argument as presented here in State v. Blackburn, 168 S.W.3d 571, 574-76 (Mo. App. S.D. 2005). In that case, the court considered an earlier version of Section 565, which used the same relevant language as at issue here. Id. at 576 (analyzing Sections 565.073.1(1), 565.074.1(1) RSMo. (2000)). The defendant argued that Section 565.073.1(1) was ambiguous because it proscribed the same conduct as Section 565.074.1(1), but punished "that behavior as a class C felony rather than a class A misdemeanor." Id. at 575. The court held that the rule of lenity did not apply because the statute was not ambiguous. Id. Defendant asks this Court not to follow Blackburn. But the Southern District, Western District, and this Court have all declined to reconsider Blackburn. Hill v. State, 532 S.W.3d 744, 748-49 (Mo. App. E.D. 2017) (citing State v. Darden, 263 S.W.3d 760, 765 (Mo. App. W.D. 2008); Ondo, 232 S.W.3d at 630)). As in previous cases, we decline to reconsider Blackburn and its progeny.

The prosecutor had discretion whether to charge Defendant with violating Section 565.074.1 or 565.076.1. The prosecutor charged Defendant with violating Section

12

565.074.1, a class E felony. Instruction No. 13 properly instructed the jury as to this charge. MAI-CR 419.76 (2017).

Defendant also contends that "the trial court reversibly erred when it refused to give Instruction No. A, and gave Instruction No. 13 instead." Instruction A offered by Defendant states in part:

> As to Count V, if you do not find the [Defendant] guilty of domestic assault in the third degree as submitted in Instruction 13, you must consider whether he is guilty of domestic assault in the fourth degree as submitted in this instruction.

The remaining part of Instruction No. A is identical to Instruction No. 13.[6]

As previously discussed, the prosecutor could charge and appropriately instruct on either third-degree or fourth-degree domestic assault. Moreover, the wording of the introductory paragraph of Instruction No. A would be improper to be submitted to the jury in lieu of Instruction No. 13. The introductory paragraph instructs the jury to consider whether Defendant was guilty of fourth-degree domestic assault only if it found him not guilty of third-degree assault under an instruction Defendant argues should not have been submitted to the jury. Further, as noted by the trial court, submitting Instruction No. A as a lesser included offense to Instruction No. 13 would be improper because both instructions set forth identical elements. See Blackburn, 168 S.W.3d at 574-76.

The trial court did not err by instructing the jury on third degree domestic assault for Count V. Defendant's third point is denied.

---

[6] The trial court also gave the jury a lesser-included instruction, submitted by Defendant, Instruction No. 14, which states in part: "As to Count V, if you do not find the [D]efendant guilty of domestic assault in the third degree as submitted in Instruction No. 13, you must consider whether he is guilty of domestic assault in the fourth degree as submitted in this instruction. . . First, that on or about May 11, 2017 in the State of Missouri, the [D]efendant recklessly caused physical injury to [victim] by striking her with a gun . . . ."

13

## Conclusion

The judgment of the trial court is affirmed.

Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Colleen Dolan, J., concurs.